STATE OF NEBRASKA, APPELLEE, V.
DOUGLAS J. CRAIG, APPELLANT.
739 N.W.2d 206

Filed July 31, 2007.    No. A-06-504.

Dennis R. Keefe, Lancaster County Public Defender, and John C. Jorgensen for appellant.

Jon Bruning, Attorney General, and Susan J. Gustafson for appellee.

INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.

CASSEL, Judge.

## I. INTRODUCTION

Douglas J. Craig filed in the county court for Lancaster County a motion for discharge based on his right to a speedy trial. The county court excluded 37 days under the catchall "good cause" provision of Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 1995). On appeal, the district court affirmed the county court's decision. Craig now appeals to this court. We agree that the delay is properly considered under the catchall category rather than as a continuance under § 29-1207(4)(b), because the record does not show that the postponement was granted at Craig's request or with his consent. We further agree with the district court that a later 40-day delay was a continuance granted at the request of Craig's counsel and that the time in which to bring Craig to trial had not expired when he filed for discharge. We therefore affirm.

## II. BACKGROUND

On April 18, 2005, the State filed a complaint in the county court charging Craig with third-offense driving under

the influence of alcoholic liquor, in violation of Neb. Rev. Stat. § 60-6,196(1)(c) (Reissue 2004). On April 20, Craig was arraigned, pled not guilty, and advised the county court that he planned to hire an attorney. The court stated that a docket call would be held on May 24 and that Craig's lawyer needed to be with him at that time.

On May 24, 2005, Craig appeared in court without counsel and explained that he had been unable to hire a lawyer due to not having work. The court appointed the public defender's office to represent Craig and told him, "you'll have to go over and see them as soon as you possibly can and come back for docket call on June 30th." A notation on the court's "Case Action Summary"—the county court equivalent to a district court's trial docket sheet—appears to state "P.D. apptmt Cont for Doc/call 6-30-at 1³⁰." A later notation on the "Case Action Summary" states that on the court's motion, the case was continued until September 1 for docket call.

On September 1, 2005, Craig's counsel stated, "Judge, we don't know how to proceed at this point. . . . Craig and I have talked (indiscernible) continue this to (indiscernible)." Craig's counsel later repeated, "We don't know how to proceed, so I'd like to maybe place it on that October 11th jury docket call." The court stated that it would place the case on the jury list to be tried in the October jury term which would begin on October 24.

On October 24, 2005, Craig filed a motion to discharge, alleging that he had been denied both his statutory and his constitutional rights to a speedy trial. On December 5, the county court entered an order finding that the time between the May 24 docket call and the June 30 docket call was for "good cause" and should not be attributed to the State. The court reasoned that the delay occurred because Craig intended to hire an attorney but was unable to do so and because the matter was continued for the appointment of a public defender. The county court concluded that 37 days should not be taxed to the State and that the State had until November 21 to bring Craig to trial. Although the court did not expressly overrule Craig's motion for discharge, the court set the matter for a jury trial beginning December 12.

On December 6, 2005, Craig filed an appeal to the district court. On March 31, 2006, the district court affirmed the decision of the county court. The district court similarly found that the time between May 24 and June 30, 2005, was properly excluded under § 29-1207(4)(f), stating that "this delay occurred as a result of the failure of [Craig] to hire an attorney contrary to what he had told the court. The court finds that this delay was 'for good cause.'" The district court added 37 days to the October 18 trial deadline. The district court further excluded the time between September 1 and October 11 under § 29-1207(4)(b), finding that Craig's counsel made an oral motion to move the docket call to October. After excluding those 40 days, the court concluded that January 2, 2006, was the last day to bring Craig to trial.

On April 28, 2006, Craig timely appealed to this court. On May 30, we dismissed the appeal for lack of jurisdiction, citing Neb. Ct. R. of Prac. 7A(2) (rev. 2001). Craig filed a motion for rehearing, and on September 5, we reinstated the appeal.

## III. ASSIGNMENT OF ERROR

Craig alleges that the district court erred in affirming the county court's decision to deny his motion to discharge on speedy trial grounds.

Although Craig's motion to discharge alleged violation of both his statutory and his constitutional rights to a speedy trial, and although his assignments of error to the district court and this court are broad enough to encompass a challenge based on constitutional grounds, Craig makes no argument in his brief regarding his constitutional right to a speedy trial, and we therefore do not consider whether Craig was deprived of such right. See *State v. Dockery*, 273 Neb. 330, 729 N.W.2d 320 (2007) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

## IV. STANDARD OF REVIEW

As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless

clearly erroneous. *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005).

■To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *State v. Washington*, 269 Neb. 728, 695 N.W.2d 438 (2005).

## V. ANALYSIS

### 1. JURISDICTION IN THIS COURT

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. *State v. Loyd, supra*. The potential jurisdictional problem in this case is caused by the county court's failure to expressly rule on Craig's motion to discharge, raising the issues of whether the county court overruled the motion and, if so, when that order became final and appealable.

■ One line of cases holds that a motion to discharge on speedy trial grounds is inferentially denied where the trial court proceeds to trial without expressly ruling on the motion and that at that point, the denial of the defendant's motion is a final, appealable order, and the defendant must secure his or her rights to appellate review by filing a timely notice of appeal. See, *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006) (where court orally overruled motion and matter then proceeded to trial); *State v. Tyma*, 264 Neb. 712, 651 N.W.2d 582 (2002) (where court did not rule on motion until after conclusion of trial). If we applied this rule literally, we would find that because the court had not yet proceeded to trial, the December 5, 2005, order was not appealable. However, we find these cases inapposite, inasmuch as the rule has been applied only in the absence of a written order determining the merits of the motion for discharge. Here, we have a written order addressing the merits; the uncertainty arises from the contents of the order.

■ A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question. *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995). The contents of the county court's order—both setting the matter

for trial and making findings on the merits of the motion for discharge consistent only with an order overruling the motion—lead us to conclude that the effect of the court's order was to deny Craig's motion to discharge. We urge trial courts to expressly state that a motion is denied, overruled, granted, or sustained so that appellate courts can avoid such intellectual exercises to deduce a court's intended ruling.

We conclude that the county court overruled Craig's motion on December 5, 2005, and that at that time, it became a final, appealable order. The district court properly acquired jurisdiction upon Craig's timely filed notice of appeal, and jurisdiction vested in this court upon Craig's timely appeal from the district court's order.

## 2. Statutory Right to Speedy Trial

Section 29-1207 requires discharge of a defendant whose case has not been tried within 6 months after the filing of the information, unless the 6 months are extended by any period to be excluded in computing the time for trial. *State v. Sims*, 272 Neb. 811, 725 N.W.2d 175 (2006). To calculate the time for speedy trial purposes, we exclude the day the information was filed, count forward 6 months, back up 1 day, and then add in any time excluded under § 29-1207(4) to determine the last day the defendant can be tried. *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002).

Craig incorrectly claims in his brief and in his motion to discharge that the complaint was filed on April 15, 2005. He thus contends that he should have been brought to trial by October 14. Although the complaint contains an April 15 date on the first page, the second page contains the signature of the county court clerk, a seal, and an April 18, 2005, date stamp. Neb. Rev. Stat. § 25-2206 (Reissue 1995) requires that "[t]he clerk of the court shall endorse upon every paper filed with him [or her] the day of filing it . . . ." We conclude that the complaint was filed on April 18. If no time was excludable, Craig's trial would have had to commence by October 18.

The focus of Craig's appeal is that the courts below erred in excluding the 37-day period of delay from the speedy trial calculation. Perhaps recognizing that the additional 40-day

period found to be excludable by the district court will prevent him from ultimately prevailing on appeal, his brief makes nary a reference to that finding. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005). Although we could resolve this appeal by limiting our analysis to the 40-day delay, we will consider both periods of delay to aid the court and counsel in determining how many days remain on the speedy trial clock.

(a) Days Excluded Under § 29-1207(4)(f)

■ Section 29-1207(4) lists the periods of delay that are excluded in computing the time for trial. The excludable periods of delay listed in § 29-1207(4) which are particularly relevant to this appeal are as follows:

> (b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial and the effect of his consent;
>
> . . . .
>
> (f) Other periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause.

It is the State's burden to establish that facts showing good cause under § 29-1207(4)(f) exist to delay a defendant's trial beyond the 6-month time period. See *State v. Feldhacker*, 267 Neb. 145, 672 N.W.2d 627 (2004).

Craig argues that the period between May 24 and June 30, 2005, was a continuance and that the catchall section of § 29-1207(4)(f) is not available to exclude the time, because a continuance is specifically enumerated in § 29-1207(4)(b). We disagree because the record does not demonstrate that Craig requested or consented to a continuance.

In *State v. Droz*, 14 Neb. App. 32, 703 N.W.2d 637 (2005), this court considered a period of delay resulting from the court's December 11, 2003, granting of Dorothy A. Droz' counsel's motion to withdraw and the appointment of a public

defender. The State argued that the time between December 11 and Droz' filing of a motion to discharge on January 29, 2004, was excludable under § 29-1207(4)(a) or (b) either as time from filing of a pretrial motion until final disposition of the motion or as delay resulting from a continuance granted at the request or with the consent of Droz or her counsel. We stated that § 29-1207(4)(a) did not apply because Droz' motion for court-appointed counsel and the court's final disposition sustaining that motion were almost simultaneous. In concluding that the delay did not fall under § 29-1207(4)(b), we stated that the record did not contain any evidence of an oral or written motion for continuance made by Droz or her counsel. We rejected the State's argument that "Droz' consent to a continuance under these circumstances is 'self-evident' because 'no one would expect a newly appointed attorney to be prepared for a felony trial on such short notice.'" 14 Neb. App. at 38-39, 703 N.W.2d at 643. Although we agreed that some delay would be expected under the circumstances, we concluded: "[A]bsent evidence that a continuance was sought by either Droz or her counsel, this period of time is not properly excludable under § 29-1207(4)(b)." 14 Neb. App. at 39, 703 N.W.2d at 643. In dicta, we then stated: "Although it could be argued that there was 'good cause' for delay following the appointment of new counsel, the district court did not make a specific finding to that effect as required by § 29-1207(4)(f)." 14 Neb. App. at 39, 703 N.W.2d at 643.

In the case at hand, during the May 24, 2005, hearing, the following colloquy occurred:

THE COURT: You were arraigned in court (indiscernible) charged with DWI third offense. You indicated then that you were going to hire your own lawyer.

[Craig]: Right. I was unable to hire a lawyer as of yet. I'm self-employed during the summer. I just do like remodeling job — jobs. And the job I was scheduled to do, she couldn't pay and she's not going to be able to do it 'til the first of June. So I thought the one that was going to start in May, she couldn't do it until June. So I — I have basically no work, and so I'm not able to — I wasn't able —

THE COURT: (indiscernible)

[Craig]: I beg your pardon?

THE COURT: Do you want me to appoint a lawyer for you?

[Craig]: I — I would rather still like to hire my own. I mean I don't know if —

THE COURT: (indiscernible)

[Craig]: Well, in that case I would need a public defender.

THE COURT: Well, you could hire one yourself.

[Craig]: I'd rather not. I'd rather not, Your Honor.

THE COURT: (indiscernible)

COURT STENOGRAPHER: Oh, why don't we use that June 30th at 1:30.

THE COURT: Okay. (indiscernible) I'll appoint the public defender to represent you and you'll have to go over and see them as soon as you possibly can and come back for docket call on June 30th (indiscernible). Okay. Go over here now and —

Like the situation in *Droz*, the record in the instant case does not support a determination that Craig requested or consented to a continuance. We do not read *Droz* to limit the application of § 29-1207(4)(b) to an express request for continuance initiated solely by the defendant or his or her counsel. In some circumstances, a continuance initiated by the trial court may fall within the ambit of § 29-1207(4)(b). But there must be more involvement by the defendant in the discussion of a continuance than was present in the case before us. To be sure, Craig did not object when the court suddenly announced that a docket call would be held on June 30, 2005. But until the trial court ordered its continuance, the topic of a possible continuance had not been raised. Up to that point, nothing Craig said can be read as impliedly requesting a continuance. Because § 29-1207(4)(b) does not apply, the county court and district court did not err in considering the delay under the catchall "good cause" provision of § 29-1207(4)(f).

■ The county court found that the delay between the May 24, 2005, docket call and the June 30 docket call was for "good cause," that it should not be attributed to the State, and

that it occurred because Craig was unable to hire an attorney as he had intended and because the matter was continued for the appointment of a public defender. The district court similarly found that the time between May 24 and June 30 was properly excluded under § 29-1207(4)(f), that the delay occurred as a result of Craig's failure to hire an attorney contrary to what he had told the court, and that the delay was "'for good cause.'" These findings by the county and district courts are supported by the record and are not clearly erroneous. Further, an accused cannot generally take advantage of a delay in being brought to trial where the accused is responsible for the delay by either action or inaction. See, e.g., *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985). The delay in this case is solely attributable to Craig.

The Nebraska Supreme Court's recent decision in *State v. Sommer*, 273 Neb. 587, 731 N.W.2d 566 (2007), does not call for a different result in this case. In *Sommer*, the district court excluded for good cause the delay resulting from a court-initiated continuance to allow a previously scheduled trial in another case to proceed. Because the record showed that the defendant in the other case entered guilty pleas 5 days before the originally scheduled trial date, the *Sommer* court found that the evidence did not show that the defendant therein could not have been tried prior to the final trial date for speedy trial purposes. In the instant case, there is no evidence in the record showing that a date earlier than June 30, 2005, was available for the continued arraignment. Thus, the record supports the lower courts' findings of good cause for the continuance.

Adding 37 days to the October 18, 2005, trial deadline, the new trial deadline would be November 24, which happened to fall on Thanksgiving, a court holiday. Trial could therefore commence on Monday, November 28, without violating Craig's right to a speedy trial. See Neb. Rev. Stat. § 25-2221 (Cum. Supp. 2006). Because Craig filed his motion for discharge on October 24, it was clearly premature.

■ We note, as is established in the colloquy reproduced above, that several of the county court's statements during the May 24, 2005, hearing appear in the record as "(indiscernible)."

It is the duty of the court reporter to make a verbatim record of judicial proceedings, and it is the obligation of the trial court to see to it that the reporter accurately fulfills that duty. *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 525 N.W.2d 219 (1995); *In re Guardianship of Breeahana C.*, 14 Neb. App. 182, 706 N.W.2d 66 (2005). A record in which numerous statements are indiscernible fails to present a verbatim record.

### (b) Days Excluded Under § 29-1207(4)(b)

Neither Craig in his brief nor the county court addressed the excludability of the time from September 1 to October 11, 2005. The district court, however, determined that those 40 days were excludable under § 29-1207(4)(b). We agree.

On September 1, 2005, Craig appeared in court with counsel, and his counsel informed the court that he and Craig did not know how to proceed, that they had "talked (indiscernible) continue this to (indiscernible)," and that he would "like to maybe place it on that October 11th jury docket call." The "indiscernibles" in the record again hamper our review, but the context sufficiently demonstrates that Craig's counsel orally requested a continuance, making the time excludable under § 29-1207(4)(b).

Adding 40 days to the November 24, 2005, trial deadline, the new trial deadline would be January 3, 2006. (The district court incorrectly stated that January 2 was the last day that Craig could be brought to trial.)

### (c) Excluded Time While Appeal Is Pending

Craig argues that any time between this court's dismissal of his appeal and the motion for rehearing is not attributable to him and should be counted against the State. The period of time from the day of the defendant's filing a notice of his or her interlocutory appeal of the trial court's denial of the motion to discharge until the time at which the appellate court mandate is spread on the record is excludable, for speedy trial purposes, as a period of delay resulting from other proceedings concerning the defendant under § 29-1207(4)(a). See *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002). We therefore conclude that the entire time from Craig's filing his notice of appeal to the district court on December 6, 2005, to the time of

spreading of the district court's mandate on the record of the county court (pursuant to our mandate to the district court) is excluded from the speedy trial calculation.

In calculating the time remaining to bring Craig to trial, we do not count the day on which Craig filed his motion to discharge. See *id.* As discussed above, adding the 37-day and 40-day excludable periods to the initial speedy trial deadline results in a deadline of January 3, 2006. Upon entry of the mandate on remand to the county court, the State has 71 days in which to bring Craig to trial.

## VI. CONCLUSION

We conclude that the county and district courts did not err in finding that the period of time between May 24 and June 30, 2005, should be excluded under the good cause provision of § 29-1207(4)(f). We further conclude that the district court's finding that a period of 40 days should be excluded under § 29-1207(4)(b) as a continuance granted at the request of Craig's counsel was not clearly erroneous. Because Craig had not suffered a denial of his statutory right to a speedy trial when he filed his motion to discharge, we affirm the decision of the district court affirming the decision of the county court.

AFFIRMED.