IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


MONTEGUT V. FRANKLIN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ANTHONY MONTEGUT, SR., ET AL., APPELLANTS,

V.

LEE E. FRANKLIN, APPELLEE.


Filed May 26, 2015.    No. A-14-869.


Appeal from the District Court for Douglas County: JOSEPH P. CANIGLIA, County Judge. Reversed and remanded for further proceedings.

Adam E. Astley, of Slowiaczek, Albers & Astley, P.C., L.L.O., for appellants.

No appearance for appellee.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Anthony Montegut, Sr.; his wife, Tamara Mosby-Montegut; and his minor children, Ayanna Montegut, Anthony I. Montegut, and Brooklyn Montegut (collectively "the Monteguts") appeal from the order of the district court for Douglas County, which dismissed an ex parte harassment protection order against Anthony's brother, Lee E. Franklin. The Monteguts' due process rights to present evidence and cross-examine witnesses were denied during the show cause hearing, and we reverse and remand for further proceedings.

## BACKGROUND

On July 28, 2014, Anthony filed a form petition and affidavit in the district court on behalf of himself, his wife, and his minor children, seeking to obtain a harassment protection order against Franklin. Anthony alleged that from October 2012 through April 2013, Franklin "[e]ngaged in [a]

- 1 -

pattern of repeated phone calls and text messages where in [sic] he threatened financial and bodily harm," resulting in the issuance of a one-year harassment protection order. Anthony further alleged that from July 1-18, 2014, following expiration of the prior protection order, Franklin began texting him again. Anthony stated that Franklin "also threatened that he has access to my children via my ex-wife." Finally, Anthony asserted that in 2014, Franklin "[p]osted professional picture from my job on the internet with derogatory/false information. As a physician, this information may pop up when patients search my name."

On July 29, 2014, the district court entered an ex parte harassment protection order, and Franklin subsequently requested a hearing.

At the hearing, held on August 28, 2014, Anthony and Franklin appeared pro se. Upon the court's inquiry, Anthony indicated that the other petitioners were not all present in the courtroom. The district court first swore in "[e]veryone that's going to testify" simultaneously. The record indicates that in addition to Anthony and Franklin, Tamara, Denisha Montegut, and Jenny Cruz were sworn in as witnesses.

The district court then proceeded to question Anthony about why he felt he needed a harassment protection order. Anthony explained that Franklin had engaged in an ongoing pattern of harassing behavior, including repeated text messages, phone calls, and threats to cause bodily harm. When the court asked what kind of threats had been made, Anthony read an offensive text message sent by Franklin in April 2012. The message included explicit language and threats of violence. The court then inquired about more recent messages, and Anthony replied that the most recent messages occurred in July 2014. Anthony attempted to clarify the content of those messages as follows:

> THE COURT: What was that message?
>
> [ANTHONY]: In there [Franklin] admits to slandering my wife by telling multiple family members that she had cheated on me. He admits that he has threatened to kill me. He admits that he has lied on me --
>
> THE COURT: Is this a message from him to you?
>
> [ANTHONY]: This is a series of -- I can actually give the (indiscernible) --
>
> THE COURT: I don't want them. I just want to know. I asked you a question. Is this a message he gave you?
>
> [ANTHONY]: These, yes. I'm actually reading from the portion that I just --
>
> THE COURT: And that's the motion (sic) from him to you.
>
> [ANTHONY]: No. The one from -- the reply --
>
> THE COURT: What was the last text message that he sent you that you were concerned about? I can't make it any simpler than that. What message did he give you that you feel you deserve an [sic] harassment protection order for?
>
> [ANTHONY]: The last message that he gave me was telling me that he has a -- he's grateful that he still has access to my children, and that he will see me at the family reunion.

Anthony informed the court that the last message was from July 1, 2014 at 12:32 p.m. The court inquired if Anthony had anything else, to which Anthony replied, "That's the last time that we've --."

At that point, the district court interrupted to question an unidentified woman, or women, as follows:

> THE COURT: Do you have anything, ma'am?
>
> UNIDENTIFIED FEMALE VOICE: Me, personally, I mean, I think -- I'm not sure if it's coming across clear. I think, if I may, Your Honor, from what my understanding is (indiscernible) Anthony, who were out of town at the time, received these series of text messages. I think the issue is --
>
> THE COURT: Okay. Alright.
>
> UNIDENTIFIED FEMALE VOICE: Your Honor, if I just may, please. I just want to be clear that, while there have been some threatening messages and some that could maybe even be considered ambiguous, the point is Anthony (indiscernible) he does not want to be contacted (indiscernible). So, we don't know how to (indiscernible)--
>
> THE COURT: Well, unfortunately, I can't just stop people from being contacted. Unless there's some kind of a threat or pattern of harassment, I don't have the authority to grant a harassment order.

The district court then allowed Franklin, largely without interruption, to explain his version of the facts. Franklin's testimony included reference to being able to see his "other niece and nephew" when they were with Anthony's ex-wife pursuant to a "joint custody" arrangement.

At the conclusion of Franklin's testimony, the district court stated "Okay. Good, stay away from each other. I don't want to see you guys back in court. If it continues, you come back and get one. Right now, I'm not going to grant a protection order." After some brief additional dialog, between the court, an unidentified woman or women, and Anthony, the court again indicated that it was denying the order, stating:

> All right. Order denied. The matter is denied. Protection order -- if it happens anymore, then you come back, either one of you, and get a protection order. You guys better learn how to stay away from each other. And if you have to have visitation, you get visitation. And you deal with -- you allow it. Whatever the visitation order from the District Court is, you guys follow it."

We note that during the course of the hearing, the court did not offer the Monteguts an opportunity to call any witnesses of their own, offer any exhibits, or cross-examine Franklin, nor did they independently request any such opportunity. We also note that over the course of eight pages of transcribed testimony, there are nine instances where the record is marked as indiscernible.

On August 28, 2014, the district court entered an order dismissing the ex parte harassment protection order. The Monteguts subsequently perfected their appeal to this court.

## ASSIGNMENTS OF ERROR

The Monteguts assert that the district court erred by failing to offer them the opportunity for a fair hearing, including the right to examine and cross-examine witnesses, (2) failing to keep an accurate record of the hearing, and (3) failing to grant their request for a protection order.

STANDARD OF REVIEW

A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Richards on behalf of Makayla C. v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

*Mootness*.

The Monteguts initially present arguments relating to the mootness doctrine and exceptions to that doctrine. They are correct that appeals involving the granting of a protection order will almost always be moot before the case is heard because of the time-limited nature of a protection order. *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000). See *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000); *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). However, the district court in this case did not grant the requested protection order. The Monteguts are appealing from an order which denied their request and dismissed the ex parte protection order. Accordingly, any discussion of exceptions to the mootness doctrine is irrelevant, regardless of how much time passes between the show cause hearing and this court's resolution of the Monteguts' appeal.

*Due Process*.

Next, the Monteguts assert that the district court erred by failing to offer them the opportunity for a fair hearing, including the right to examine and cross-examine witnesses. They argue that the court denied them their due process rights during the course of the show cause hearing by not allowing them to make their own voluntary statements without interruption, refusing to accept exhibits offered by Anthony, and not giving them the opportunity to cross-examine Franklin.

Because the intrusion on a respondent's liberty interests is limited, the procedural due process afforded in a protection order hearing is likewise limited. *Torres v. Morales, supra*. The contested factual hearing in protection order proceedings is a show cause hearing, in which the fact issues before the court are whether the facts stated in the sworn application are true. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). A prima facie case may be established by a form petition and affidavit, but the petition and affidavit cannot be considered as evidence until offered and accepted at the trial as such. *Id.* An ex parte order does not relieve the petitioner of the burden to establish by a preponderance of the evidence the truth of the facts supporting a protection order. *Id.* The Nebraska Supreme Court has stated, "While we do not expect show cause harassment protection hearings to reflect the full panoply of procedures common to civil trials, we do hold that at a minimum, testimony must be under oath and documents must be admitted into evidence before being considered." 279 Neb. at 398.

In *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999), the Nebraska Supreme Court found that the appellant's statutory right to cross-examine witnesses had been violated during a show cause hearing for a protection order where the trial court explicitly denied requests from the opposing party's counsel to question his client and cross-examine the appellant. The Supreme Court noted that Neb. Rev. Stat. § 27-614(1) (Reissue 2008) gives judges the right to call witnesses, but it also gives parties the right to cross-examine such witnesses. *Elstun v. Elstun, supra*.

In *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012), this court found that the appellant's due process rights were violated when the trial court made a blanket statement that it was not going to allow counsel to examine or cross-examine witnesses. We found that a trial court may not enforce a blanket policy denying a party the right to call nonparty witnesses, because such affects the requirements of procedural due process. *Id.*

More recently, in *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014), the Nebraska Supreme Court found appellant's due process rights to examine and cross-examine witnesses were not violated. In that case, the appellant sought a domestic abuse protection order against her boyfriend. She was represented by counsel at the show cause hearing; her boyfriend appeared pro se. At the hearing, the trial judge questioned both parties about the events in question. Neither party asked to question witnesses or present further evidence. Absent any such request or indication from the court that such a request would be denied, the Supreme Court was unable to find a denial of the appellant's right to cross-examine the other party. The Court determined that the trial court did not err by questioning the parties and absent a request from counsel to participate, the court did not err in not allowing the appellant's counsel to question the opposing party or present further evidence.

In the present case, the parties appeared pro se. The trial judge swore in Anthony, Franklin, and three additional witnesses all at the same time. The court then proceeded to question witnesses. It does not appear that witnesses were called to the stand formally to present their testimony. The court first questioned Anthony about why he felt a harassment protection order was necessary. Although the record is marred by portions of indiscernible testimony, it appears that at one point, Anthony wanted to give the court a series of text messages he was testifying about and the court declined to take them. It is not clear from the record whether Anthony intended to present the court with a printed version of the messages or merely show them to the court on a phone or other device. At the conclusion of Anthony's testimony, it also appears that the court interrupted Anthony after asking if he "had anything else" and turned its attention to an unidentified woman or women, whose brief testimony is also marred by indiscernible segments. At the conclusion of Franklin's testimony, the court did not offer the Monteguts an opportunity to cross-examine him. Although the Monteguts did not specifically make such a request and the court did not make any blanket statement that cross-examination would be denied, the court's manner of questioning Anthony and the unidentified woman or women and its refusal to look at the text messages offered by Anthony certainly chilled any thoughts Anthony, as a pro se litigant, might have had about cross-examining Franklin. We find that the Monteguts' due process rights to present evidence and cross-examine witnesses were denied. Accordingly, we reverse and remand for further proceedings.

*Record of Hearing*.

The Monteguts assert that the district court erred by failing to keep an accurate record of the hearing.

Neb. Ct. R. App. P. § 2-105(A)(1) (rev. 2010) expressly requires a "verbatim record of the evidence offered at trial or other evidentiary proceeding" and specifies that such record "may not be waived." It is the duty of the court reporter to make a verbatim record of judicial proceedings, and it is the obligation of the trial court to see to it that the reporter accurately fulfills that duty. *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 525 N.W.2d 219 (1995). This court has stated, "A record in which numerous statements are indiscernible fails to present a verbatim record." *State v. Craig*, 15 Neb. App. 836, 846, 739 N.W.2d 206, 215 (2007).

The indiscernible portions of the record in this case made it difficult for this court to conduct a thorough appellate review. Although it is not clear what caused the indiscernible segments of testimony in this case, calling witnesses to the stand one by one and identifying them on the record would at least make it clear who was speaking at any given time. On remand, the court should employ procedures to aid it in its obligation to see that the court reporter accurately fulfills his or her duty to make a verbatim record of the proceedings.

*Denial of Protection Order*.

Finally, the Monteguts assert that the district court erred in failing to grant their request for a protection order, and they argue that there is sufficient evidence on the record to support the issuance of a protection order. We have already determined that the Monteguts' due process rights were denied and that a verbatim record was not presented. We have reversed and remanded for further proceedings. Under the circumstances of this case and based on the record presented, we decline to address this assignment of error further. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).

## CONCLUSION

The Monteguts' due process rights to present evidence and cross-examine witnesses were denied. Accordingly, we reverse and remand for further proceedings. On remand, the district court should employ procedures to aid it in its obligation to see that the court reporter accurately fulfills his or her duty to make a verbatim record of the proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

- 6 -