Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/15/2021 12:08 AM CDT

State of Nebraska, appellee, v.
Keith P. Coomes, appellant.

___ N.W.2d ___

Filed July 23, 2021.    No. S-20-720.

1. **Judgments: Speedy Trial: Appeal and Error.** Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.

2. **Judgments: Appeal and Error.** Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

3. **Appeal and Error.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

4. **Criminal Law: Trial: Evidence: Proof.** Trial courts have discretion regarding the order of proof, even in criminal cases.

5. **Trial: Evidence: Proof.** The order in which evidence is presented generally does not affect the burden of proof.

6. ____: ____: ____. The order of proof is a rule of practice, not of law, and departures are allowed whenever the court considers them necessary to promote justice, so long as the trial court does not place the burden of proof on the wrong party.

7. **Trial: Evidence: Proof: Appeal and Error.** Error ordinarily cannot be successfully asserted on account of any irregularity in the order of proof unless prejudice is shown.

8. **Speedy Trial: Evidence: Proof.** To meet its burden of proving excludable time under Neb. Rev. Stat. § 29-1207(4), the State is entitled to rely on evidence offered by the defendant and received by the court.

9. **Speedy Trial.** To calculate the 6-month speedy trial period under Neb. Rev. Stat. § 29-1207 (Reissue 2016), a court must exclude the day the complaint was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.

10. \_\_\_\_. The 6-month period within which an accused is to be brought to trial refers to a period of 6 calendar months, not 180 days.

11. **Speedy Trial: Motions for Mistrial.** Once a mistrial is granted, the speedy trial clock is restarted, and the 6-month speedy trial period commences to run from the date of the mistrial.

12. **Speedy Trial.** The primary burden is on the State to bring an accused person to trial within the time provided by law.

13. **Speedy Trial: Proof.** When a motion for absolute discharge is filed, the State bears the burden to show, by the greater weight of the evidence, the applicability of one or more of the excluded time periods under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016).

14. **Speedy Trial: Good Cause: Words and Phrases.** "Good cause," for purposes of Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016), means a substantial reason, one that affords a legal excuse; it is a factual question dealt with on a case-by-case basis.

15. **Good Cause: Proof.** A district court's good cause findings must be supported by evidence in the record, and the State bears the burden of establishing facts showing that good cause existed.

16. **Speedy Trial: Good Cause: Appeal and Error.** When a trial court relies on Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016) to exclude time from the speedy trial calculation, a general finding of "good cause" will not suffice. Instead, the court must make specific findings as to the good cause which resulted in the delay, and an appellate court will give deference to such factual findings unless they are clearly erroneous.

17. **Speedy Trial: Words and Phrases.** For purposes of the speedy trial calculation, there is no meaningful distinction between the phrases "period of time" and "period of delay."

18. \_\_\_\_: \_\_\_\_. Because a period of delay is generally synonymous with a period of time, excludable periods can result from delays in the progression of a criminal case regardless of whether the trial date was postponed or remained unchanged.

19. **Speedy Trial: Appeal and Error.** In an appeal from the denial of a motion for absolute discharge, the State as appellee does not request affirmative relief by arguing that additional periods of delay, which were neither considered nor ruled upon by the district court, are also properly excludable.

20. **Speedy Trial: Motions for Continuance.** Excludable time for a continuance begins the day after the continuance is granted and includes the day on which the continuance ends.

Appeal from the District Court for Dawes County: Travis P. O'Gorman, Judge. Affirmed.

Amy L. Patras and Andrew M. Pope, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Keith P. Coomes appeals from the district court's denial of his motion for absolute discharge. Among other things, Coomes argues the court impermissibly shifted the burden of proof during the hearing on his motion, and he argues the court erred in finding "good cause" under Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016) to exclude a period of time immediately following the appointment of replacement defense counsel. Although our speedy trial calculations differ somewhat from the trial court's calculations, we agree that Coomes' statutory speedy trial rights were not violated and therefore affirm.

## I. BACKGROUND

### 1. First Trial

On August 9, 2018, the State filed an information in the district court for Dawes County, charging Coomes with assault in the first degree (a Class II felony) and assault in the third degree (a Class I misdemeanor). Coomes retained attorney Jon Worthman to represent him.

After several continuances agreed to by the defense, the matter came on for jury trial on September 12, 2019. The jury found Coomes not guilty on the third degree assault charge,

but could not reach a unanimous verdict on the other charge. The court therefore accepted the jury's verdict on the third degree assault charge, and it declared a mistrial on the first degree assault charge. Later the same day, the court set the matter for a status hearing on October 22 to address whether the State would seek retrial on the charge of first degree assault.

## 2. Proceedings on Retrial

### (a) October 22, 2019, to January 17, 2020

At the status hearing on October 22, 2019, defense counsel appeared without Coomes and moved to continue the hearing, advising that Coomes had been seriously injured in a motorcycle accident and required surgery. The court granted the motion and continued the matter to December 10.

At the December 2019 hearing, defense counsel again appeared without Coomes and requested another continuance, representing that Coomes was still recovering and unable to leave his home. The continuance was granted and a status conference was set for January 7, 2020.

At the January 7, 2020, hearing, defense counsel again appeared without Coomes and moved to continue because his client "still [couldn't] travel." The court granted the motion and continued the matter for a pretrial hearing on January 17.

No one disputes that the period of delay from October 22, 2019, to January 17, 2020, was attributable to Coomes for purposes of the speedy trial calculation.

### (b) January 17 to February 11, 2020

The pretrial hearing set for January 17, 2020, did not occur. Instead, the district court entered an order stating: "This matter comes before the Court on the Court's own Motion. Jon Worthman is removed as counsel for the Defendant. A status hearing will be held in this matter on Feb[.] 11, 2020, at 1:00, p.m." The order did not provide a reason for the sua sponte

removal of Coomes' retained counsel, but in a later order, the court stated that Worthman had been arrested.[1]

### (c) February 11 to March 10, 2020

At the status hearing on February 11, 2020, Coomes appeared without counsel. On the record, the court informed Coomes that Worthman was "no longer practicing" law and asked Coomes what he wanted to do about counsel moving forward. Coomes indicated he would like the court to consider appointing counsel in this case, as well as in an unrelated criminal case he had pending. After obtaining information on Coomes' financial situation, the court stated:

Based on what I know and what you've provided to me, I will find that you are indigent as that term is defined by the law. I will appoint the public defender in both of your cases . . . to represent you.

What I will do is I will give her a chance to meet with you; become familiar with your files. So I will set a status conference on March 10th at one o'clock. So you need to be back here that date and time with [the public defender] and then it'll go forward.

Later that same day, the prosecutor and the public defender appeared before the court, and the public defender made an oral motion to withdraw based on a conflict of interest. The court granted the motion and appointed attorney Andrew Pope to represent Coomes.

### (d) March 10 to April 7, 2020

At the status hearing on March 10, 2020, Coomes was present with his appointed counsel, Pope. The court asked Pope whether he had been able to review the file and "get caught up." Counsel replied, "I haven't, Your Honor." He explained, "I just today had a chance to speak with Mr. Coomes" and had just filed motions for discovery and for preparation of

---

[1] See, generally, *State of Nebraska ex rel. Counsel for Dis. v. Worthman*, 306 Neb. 289, 953 N.W.2d 534 (2020).

the transcript from the original trial. When asked by the court whether he would be ready for a pretrial hearing soon, Coomes' counsel replied, "Once I get discovery and have a chance to go through that, which I don't think it would be too much of an issue, I could get things moving towards pretrial." With the agreement of the parties, the court set another status hearing for April 7, with the expectation that a pretrial date would be set at that hearing.

Our record shows the pretrial motions mentioned by Coomes' counsel during the status hearing were filed on March 10, 2020, and a journal entry dated April 3, 2020, shows the motions were granted.

### (e) April 7 to May 12, 2020

At the status hearing on April 7, 2020, Coomes appeared by telephone and his counsel appeared via video conference. The State moved to continue for another status hearing "a month down the road," explaining it had provided the requested discovery in the case to be retried, but had not yet provided the requested discovery in Coomes' other pending criminal case. Coomes' counsel responded, "Judge, that's fine with me," and the court continued the matter for another status hearing on May 12.

### (f) May 12, 2020, Hearing
### and June 9 Pretrial

The status hearing on May 12, 2020, was held via video conference. Coomes did not appear for the hearing, and the court's attempts to reach Coomes using the number provided by defense counsel were unsuccessful. The hearing proceeded without objection, and defense counsel advised the court he had spoken with Coomes the day before the hearing and Coomes wanted to get the case "scheduled for retrial." The court set a pretrial hearing for June 9 and advised defense counsel that no change of plea would be accepted after the pretrial.

At the June 9, 2020, pretrial, all counsel were present and Coomes appeared via telephone. After discussing counsel's

availability, the court proposed setting retrial for August 17 and 18 and using space at the local high school or college to allow for social distancing of the jury. After both counsel indicated they were available on those dates, the court asked Coomes directly, "Does that work for you Mr. Coomes?" Coomes replied, "Yes, it does." The court then set retrial for August 17 and 18.

### (g) Motion for Absolute Discharge, Hearing, and Order

On August 10, 2020, Coomes filed a motion for absolute discharge on statutory speedy trial grounds. One week later, the court held a hearing on the motion and the following colloquy occurred:

> THE COURT: . . . We are set for a motion for absolute discharge. [Defense counsel], do you have any evidence?
>
> [Defense counsel]: Yes, Judge. I have three exhibits marked Exhibit 5, Exhibit 6, and Exhibit 7. Exhibit 5 that I would offer into evidence is a complete transcript of proceedings held in this matter since I think the mistrial on September 12th.
>
> THE COURT: Any objection to 5?
>
> [Prosecutor]: No, Your Honor.
>
> THE COURT: 5 is received.
>
> [Defense counsel]: Exhibit 6 is an affidavit of counsel in support of the discharge. I would offer Exhibit 6.
>
> THE COURT: Any objection to 6?
>
> [Prosecutor]: No, Your Honor.
>
> THE COURT: 6 is received.
>
> . . . .
>
> [Defense counsel]: And then Exhibit 7 is the complete court file in CR18-44. I'd offer Exhibit 7 into evidence.
>
> THE COURT: Any objection to 7?
>
> [Prosecutor]: No, Your Honor.
>
> THE COURT: 7 is received.
>
> . . . .

THE COURT: Any evidence from the State?

[Prosecutor]: No, Your Honor.

After hearing argument, the court took the matter under advisement. In an order entered September 28, 2020, the district court recited the applicable law, including that it was the State's burden to prove the applicability of any excludable periods under § 29-1207(4). The court then overruled Coomes' motion for absolute discharge, reasoning:

> [W]ithout any excludable periods, [Coomes] should have been brought to trial by March 12, 2020.
>
> The Court finds there to be 163 excludable days. The entire time between October 22, 2019 until April 7, 2020 is excludable time. From October 22, 2019 until at least January 17, 2020, the case was continued at [Coomes'] request because of his injuries.
>
> Due to the arrest of [Coomes'] original attorney, Mr. Pope was appointed to represent [Coomes] on January 17, 2020. Mr. Pope needed time to be brought up to speed on [Coomes'] case to provide him with a proper defense. Mr. Pope was up to speed on April 7, 2020. Thus, the time between January 17, 2020 until April 7, 2020, is excluded for good cause pursuant to Section 29-[1207](4)(f).
>
> The Court starts the clock again on April 7, 2020. The present motion stops the clock again on August 10, 2020. *State v. Williams*, 277 Neb. 133 (2009).
>
> Adding 163 days to the original date of March 12, 2020, gets us to August 22, 2020. [Coomes'] Motion for Absolute Discharge is denied.

Coomes timely appealed, and we moved this case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Coomes assigns five errors, which we consolidate and restate into three. He assigns the district court erred in (1) requiring him to produce his evidence in support of absolute discharge first, thereby improperly shifting the burden of proof from the State to him; (2) finding the State met its burden

of proving excludable time when it offered no evidence at the hearing; and (3) finding there was "good cause" under § 29-1207(4)(f) to exclude the time period from January 17 to April 7, 2020.

## III. STANDARD OF REVIEW

[1,2] Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.[2] Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[3]

## IV. ANALYSIS

### 1. Burden of Proof

Coomes' first two assignments of error pertain to the burden of proof. In his first assignment, Coomes argues that "the district court should have started the presentation of evidence - the burden of production of evidence - with the State,"[4] but instead "required [him] to produce his evidence in support of his Motion for Absolute Discharge"[5] first. Coomes argues the order in which evidence was presented impermissibly shifted the burden of proof from the State to him. In his second assignment, Coomes argues that because the State failed to offer any evidence at the hearing, it necessarily failed to meet its burden of proving any excludable periods of time. Coomes admits he did not raise either of these issues—by objection or otherwise—before the district court. He therefore asks that we review both assignments for plain error.

---

[2] *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021).

[3] *State v. Hernandez, ante* p. 299, 959 N.W.2d 769 (2021).

[4] Brief for appellant at 14.

[5] *Id.*

[3] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[6] As we explain, on this record there is no plain error regarding either the order of proof or the burden of proof.

### (a) No Plain Error in Order of Proof

[4-7] Nebraska has a statute which sets out the order in which evidence should be presented at trial,[7] but we have long recognized that trial courts have discretion regarding the order of proof,[8] even in criminal cases.[9] Customarily, the party bearing the burden of proof presents its evidence first.[10] But the order in which evidence is presented generally does not affect the burden of proof.[11] This is so because the order of proof is "a rule of practice, not of law, and departures are allowed

---

[6] *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021).

[7] See Neb. Rev. Stat. § 29-2016 (Reissue 2016).

[8] See, *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996) (trial court has discretion to allow introduction of evidence in rebuttal which should have been introduced during case in chief); *Hyde v. Cleveland*, 203 Neb. 420, 279 N.W.2d 105 (1979) (order of proof is within trial court's discretion and irregularity cannot successfully be asserted absent prejudice); *Berggren v. Hannan, O'Dell & Van Brunt*, 116 Neb. 18, 215 N.W. 556 (1927) (same).

[9] See, *State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992) (order of proof is within discretion of trial court and ruling will not be reversed absent prejudice); *State v. Adams*, 181 Neb. 75, 147 N.W.2d 144 (1966) (order of proof is within discretion of trial court); *State v. Barr*, 90 Neb. 766, 134 N.W. 525 (1912) (order of proof is within discretion of trial court and reviewed for abuse of discretion).

[10] See 5 Am. Jur. *Trials* 505, § 3 at 509-10 (1966) ("[u]nder the normal order of proof the party with the burden of proof also has the duty or burden of proceeding with the evidence to establish the facts").

[11] See 75 Am. Jur. 2d *Trial* § 269 (2018).

whenever the court considers them necessary to promote justice, so long as the trial court does not place the burden of proof on the wrong party."[12] As such, error ordinarily cannot be successfully asserted on account of any irregularity in the order of proof unless prejudice is shown.[13]

On this record, we reject Coomes' suggestion that the trial court committed plain error by requiring him to produce his evidence first. First, we question whether the order of proof in this case can fairly be characterized as a decision of the court at all. At the start of the hearing, the court stated, "We are set for a motion for absolute discharge. [Defense counsel], do you have any evidence?" Defense counsel then proceeded to offer three exhibits. Nowhere in this exchange did the court require or even invite Coomes to produce his evidence first. It appears to us that the court's standard housekeeping question to defense counsel simply prompted counsel to offer his evidence at that time.

But even if we construe the court's statement as a deliberate invitation to Coomes to offer his evidence first, we see no indication on this record that the order of proof at the evidentiary hearing caused the court to impermissibly shift the burden of proving excludable time from the State to Coomes. To the contrary, the court's order correctly recited the settled principle that the State bears the burden to prove, by the greater weight of the evidence, the applicability of one or more of the excluded time periods under § 29-1207(4).[14]

---

[12] *Id.* at 523. See, also, *Osborn, supra* note 9, 241 Neb. at 430, 490 N.W.2d at 165 ("the judge may determine generally the order in which parties will adduce proof; his or her determination will be reviewed only for abuse of discretion"); *Small v. State*, 165 Neb. 381, 395, 85 N.W.2d 712, 720-21 (1957) ("[t]he order in which a party shall introduce his proof is to a great extent discretionary with the trial court, and the court's action will not be reversed unless an abuse of discretion is shown"); Daniel A. Morris, Nebraska Trials § 8:3 at 225 (2020) ("[a]ny departure from the usual order of proof is discretionary with the trial court").

[13] See *Hyde, supra* note 8. See, also, Morris, *supra* note 12.

[14] See, e.g., *Jennings, supra* note 2.

No matter the reason for the irregularity in the order of proof, we can discern no prejudice to a substantial right of Coomes based on the fact that his counsel offered evidence first. We therefore find no plain error resulting from the order of proof during the evidentiary hearing.

### (b) State Can Rely on Evidence
### Adduced by Coomes

Coomes' second assignment of error argues that because the State failed to offer any evidence at the absolute discharge hearing, it necessarily failed to meet its burden of proof and it was plain error for the district court to conclude otherwise. We rejected a similar argument in *State v. Hernandez*.[15]

In that case, the defendant moved for absolute discharge, alleging his statutory speedy trial rights had been violated.[16] The defendant's motion contained statements of fact regarding his incarceration in Iowa during a certain period of time. At the hearing on the defendant's motion for absolute discharge, the State offered no evidence. When the district court overruled the motion for discharge, it relied in part on admissions contained in the defendant's motion. On appeal, the defendant argued that because the State presented no evidence at the hearing on his motion for discharge, the State necessarily failed to meet its burden of proof. We disagreed.

We explained that the statements of fact in the defendant's motion for absolute discharge were properly construed as judicial admissions and therefore served as a substitute for evidence. As a matter of first impression, we saw no reason why the principles governing judicial admissions of a party should not also apply to admissions made in a motion for absolute discharge. We therefore concluded not only that the State was entitled to take advantage of the defendant's judicial admissions as evidence pertaining to the motion, but also that "the State's failure to produce its own evidence did not

---

[15] *Hernandez, supra* note 3.

[16] *Id.*

necessarily mean that the district court erred in overruling [the defendant's] motion."[17]

Our reasoning in *Hernandez* is consistent with our jurisprudence generally, which allows parties to rely on evidence offered by the other side.[18] As one legal commentator explains:

In determining the weight and sufficiency of the evidence, evidence offered by either side that is helpful to the other side may be used by the other side. In other words, any deficiencies in one party's case may be cured by proof presented by the opposing party. This is so because the jury can consider all the evidence, regardless of which side introduced it.

. . . .

[P]roof of any element of an offense may come from either party. Consequently, where the defense presents evidence, this evidence may also directly or inferentially support a reasonable finding of guilt or may assist in proving the state's case, and the accused cannot complain that the evidence adduced by the prosecution is insufficient where the accused has supplied the deficiency.[19]

---

[17] *Id.* at 305, 959 N.W.2d at 775.

[18] See *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 444, 610 N.W.2d 398, 407-08 (2000) ("[t]he burden of proof which a party has may be supported by evidence produced by the opposing party as well as by his or her own evidence"). See, also, *State v. Brown*, 235 Neb. 10, 453 N.W.2d 576 (1990) (affirming denial of motion to suppress where only evidence presented was offered by defendant).

[19] 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1547 at 266-67 (2016). See, also, *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996) ("[p]roof of any element may come from either party; it is not required that the proof come solely from the State"); *State v. Pittera*, 139 N.H. 257, 260, 651 A.2d 931, 933 (1994) ("[w]e review the entire trial record because, even though the defendant is not required to present a case, if he chooses to do so, he takes the chance that evidence presented in his case may assist in proving the State's case"); *People v. Husar*, 22 Ill. App. 3d 758, 767, 318 N.E.2d 24, 32 (1974) ("[e]vidence introduced by a defendant may be considered by the trier of the facts," and "it may supply deficiencies in the State's proof").

Coomes offered three exhibits at the hearing on his motion for absolute discharge: a certified copy of the court file in his criminal case, transcripts of the various hearings before the district court after the mistrial was declared, and an affidavit from Coomes' counsel reciting the relevant procedural history and showing counsel's speedy trial calculations. After the court received these exhibits, the State did not offer any additional evidence, and the matter was taken under advisement.

[8] While it is somewhat puzzling that the State did not offer evidence, or at least join in the offer made by Coomes, we nevertheless hold the State was entitled to rely upon the evidence offered by Coomes, and received by the court, in meeting its burden of proving excludable time under § 29-1207(4).[20] On this record, it was not plain error for the court to rely on evidence offered by the defense when determining whether the State met its burden of proof.

## 2. Speedy Trial Analysis

Considering all available evidence in the record, we proceed to address Coomes' final assignment of error, in which he argues the record does not support the trial court's finding that "good cause" under § 29-1207(4)(f) excludes the time period from January 17 to April 7, 2020. First, we review the principles of law governing speedy trial calculations generally.

A criminal defendant's speedy trial rights are governed by § 29-1207 and Neb. Rev. Stat. § 29-1208 (Reissue 2016). As pertinent to this appeal, § 29-1207 provides, in relevant part:

> (1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.
>
> (2) Such six-month period shall commence to run from the date the indictment is returned or the information filed . . . .

---

[20] See *Hernandez, supra* note 3.

(3) If a defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, such period shall commence to run from the date of the mistrial, order granting a new trial, or the mandate on remand.

(4) The following periods shall be excluded in computing the time for trial:

. . . .

(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel. . . . A defendant is deemed to have waived his or her right to speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory six-month period;

. . . .

(f) Other periods of delay not specifically enumerated in this section, but only if the court finds that they are for good cause.

[9-11] To calculate the 6-month period under § 29-1207, "a court must exclude the day the complaint was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried."[21] The 6-month period within which an accused is to be brought to trial refers to a period of 6 calendar months, not 180 days.[22] Once a mistrial is granted, the speedy trial clock is restarted,[23] and the 6-month speedy trial period commences to run from the date of the mistrial.[24]

[12,13] We have long recognized that the primary burden is on the State to bring an accused person to trial within the

---

[21] *State v. Chapman*, 307 Neb. 443, 448, 949 N.W.2d 490, 493-94 (2020).

[22] See *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981).

[23] *State v. Dockery*, 273 Neb. 330, 729 N.W.2d 320 (2007).

[24] *Id.* See § 29-1207(3).

time provided by law.[25] If a defendant is "not brought to trial before the running of the time for trial as provided for in section 29-1207, as extended by excluded periods, he or she shall be entitled to his or her absolute discharge from the offense charged."[26] When a motion for absolute discharge is filed, the State bears the burden to show, by the greater weight of the evidence, that one or more of the excluded time periods under § 29-1207(4) are applicable.[27]

In this case, all parties agree the 6-month speedy trial clock was restarted on September 12, 2019, the date the mistrial was declared.[28] Excluding that day, counting forward 6 months, and backing up 1 day, the State was required to retry Coomes on or before March 12, 2020, unless the State proved excludable time periods.

We agree with the parties that the 87-day period between October 22, 2019, and January 17, 2020, was properly excludable as a period of delay resulting from continuances granted at the request of Coomes' counsel.[29] The dispute in this appeal centers around the excludability of various periods of delay occurring after January 17.

The district court found the entire period between January 17 and April 7, 2020, was excludable for "good cause" under § 29-1207(4)(f), due to the appointment of replacement defense counsel who "needed time to be brought up to speed" in order to provide a proper defense. On appeal, Coomes argues none of the time after January 17 should have been excluded.

---

[25] See, *Hernandez, supra* note 3; *State v. Richter*, 240 Neb. 223, 481 N.W.2d 200 (1992); *State v. Beck*, 212 Neb. 701, 325 N.W.2d 148 (1982); *State v. Bolton*, 210 Neb. 694, 316 N.W.2d 619 (1982), *disapproved on other grounds, State v. Tamayo*, 280 Neb. 836, 791 N.W.2d 152 (2010).

[26] § 29-1208.

[27] *Hernandez, supra* note 3.

[28] See *Dockery, supra* note 23.

[29] See § 29-1207(4)(b).

The State disagrees. It asserts the trial court properly excluded the period between February 11 and April 7, 2020, for good cause under § 29-1207(4)(f). In addition, the State argues that Coomes consented to the period of delay between March 10 and May 12, and it asserts that time is also excludable under § 29-1207(4)(b).

In the sections that follow, we consider the parties' arguments.

### (a) Good Cause

[14] "Good cause," for purposes of § 29-1207(4)(f), is not defined by statute, but in the related context of considering "good cause" under the speedy trial provisions of Nebraska's detainer statute,[30] we have said "'[g]ood cause means a substantial reason; one that affords a legal excuse.'"[31] We have also recognized that good cause is "'something that must be substantial, but [is] also a factual question dealt with on a case-by-case basis.'"[32] We have found this general definition to be fitting when analyzing "good cause" to exclude time under § 29-1207(4)(e),[33] and we now conclude it is also fitting to apply when analyzing good cause under § 29-1207(4)(f).

[15,16] A district court's good cause findings must be supported by evidence in the record, and the State bears the burden of establishing facts showing that good cause existed.[34] Moreover, when a trial court relies on § 29-1207(4)(f) to exclude time from the speedy trial calculation, we have said that a general finding of "good cause" will not suffice.[35] Instead, the court must make specific findings as to the good cause which resulted in the delay.[36] An appellate court

---

[30] See Neb. Rev. Stat. § 29-3805 (Reissue 2016).

[31] *State v. Kolbjornsen*, 295 Neb. 231, 237, 888 N.W.2d 153, 157 (2016).

[32] *Id.*

[33] *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017).

[34] See *State v. Baird*, 259 Neb. 245, 609 N.W.2d 349 (2000).

[35] *State v. Kinstler*, 207 Neb. 386, 299 N.W.2d 182 (1980).

[36] See *id.*

will give deference to such factual findings unless they are clearly erroneous.[37]

With these principles in mind, we consider the district court's factual findings of good cause. We focus first on the time period from January 17 to February 11, 2020.

### (i) January 17 to February 11, 2020

On January 17, 2020, Coomes' counsel was removed by a sua sponte order of the trial court, and replacement counsel was appointed by the court on February 11. In his appellate briefing, Coomes questions the trial court's authority to remove his privately retained counsel, but this appeal does not require us to address the propriety of the court's decision in that regard and we express no opinion on that issue. Instead, the inquiry for purposes of our speedy trial analysis is whether the district court's finding of good cause for the delay resulting from the appointment of replacement counsel was clearly erroneous.

The court's order recited the following factual findings in support of its good cause determination:

> Due to the arrest of [Coomes'] original attorney, Mr. Pope was appointed to represent [Coomes] on January 17, 2020. Mr. Pope needed time to be brought up to speed on [Coomes'] case to provide him with a proper defense. Mr. Pope was up to speed on April 7, 2020. Thus, the time between January 17, 2020 until April 7, 2020, is excluded for good cause pursuant to Section 29-[1207](4)(f).

The court's finding that replacement counsel was appointed on "January 17, 2020," is clearly erroneous, as the record plainly shows that replacement counsel was not appointed until the hearing on February 11. Because the trial court made no other specific factual findings that could arguably support a finding of good cause for the delay from January 17 to February 11, we agree with Coomes that the record does not support excluding the period from January 17 to February 11 for good

---

[37] See *State v. Feldhacker*, 267 Neb. 145, 672 N.W.2d 627 (2004).

cause. But as we explain next, we find the record does support the court's good cause finding for the period from February 11 to April 7.

### (ii) February 11 to April 7, 2020

Coomes argues this time period was not excludable under the good cause provision of § 29-1207(4)(f) for two reasons. First, he argues there was no "period[] of delay" for purposes of § 29-1207(4)(f). Second, he argues there was no evidence to support the conclusion that replacement counsel needed additional time to prepare for trial. We find no merit to either argument.

For his "period[] of delay" argument, Coomes relies on *State v. Covey*[38] for the proposition that "[u]nder a plain reading of § 29-1207(4)(f), before an evaluation for good cause need be made, there must first be a 'period of delay.'" As we explain, that case is inapposite.

In *Covey*, we were considering whether a "'Motion to Quash Death Penalty'" filed by the defendant amounted to a "period of delay" for purposes of calculating speedy trial. We concluded it did not, reasoning the motion recited that a hearing on its substance should only be taken up "'in the event of Defendant's conviction for first degree murder.'"[39] There was no "period of delay" caused by filing the motion, because "by its terms, this motion was not to be decided before trial as to guilt nor did it impact the commencement of trial."[40] The circumstances in *Covey* were unique in that the defendant's pretrial motion did not have any bearing at all on the preparation for, or commencement of, trial, and by its own terms was not to be taken up until after trial.

[17,18] Other cases clarify that, for purposes of the speedy trial calculation, there is no meaningful distinction between

---

[38] *State v. Covey*, 267 Neb. 210, 215, 673 N.W.2d 208, 212 (2004).

[39] *Id.*

[40] *Id.*

the phrases "period of time" and "period of delay."[41] Because a period of delay is generally synonymous with a period of time, we have said that excludable periods can result from delays in the progression of a criminal case "regardless of whether the trial date was postponed or remained unchanged."[42] Based on this settled authority, we find no merit to Coomes' argument that there was no "period of delay" between February 11 and April 7, 2020.

Similarly, we find no merit to Coomes' argument that there was no evidence to support the finding that replacement counsel needed additional time to prepare for trial, thus there was no "good cause" for excluding the period from February 11 to April 7, 2020. As a threshold matter, we observe generally that under the appropriate circumstances, the period of time following the appointment of replacement counsel can support a good cause finding under § 29-1207(4)(f), assuming the trial court makes sufficient specific findings.[43] And in the instant appeal, we conclude the district court's findings were sufficient to support its determination of good cause for the delay occasioned by the appointment of Coomes' replacement counsel.

Immediately after appointing replacement defense counsel on February 11, 2020, the court advised Coomes it would

---

[41] *Feldhacker, supra* note 37, 267 Neb. at 155, 672 N.W.2d at 635 (explaining that "[t]he phrase 'period of delay' in § 29-1207(4)(f) refers to a specified period of time in which trial did not commence").

[42] *State v. Lovvorn*, 303 Neb. 844, 850, 932 N.W.2d 64, 69 (2019).

[43] See, e.g., *State v. Craig*, 15 Neb. App. 836, 739 N.W.2d 206 (2007) (finding "good cause" under § 29-1207(4)(f) to exclude time between appointment of public defender and counsel's first appearance when defendant previously represented to court he would retain private counsel and failed to do so); *State v. Droz*, 14 Neb. App. 32, 39, 703 N.W.2d 637, 643 (2005) (noting "it could be argued that there was 'good cause' for delay following the appointment of new counsel," but declining to find period of time excludable for good cause because court failed to make specific findings to that effect). See, also, *Blackwell v. State*, 338 Ark. 671, 1 S.W.3d 399 (1999) (finding that delay resulting from need for appointment of new counsel excludable for good cause).

set the next status hearing for March 10, to give Coomes a chance to meet with his new counsel and allow counsel to become familiar with Coomes' files; Coomes responded, "All right. Thank you." At the hearing on March 10, the court asked defense counsel whether he had been able to review the file and "get caught up," and counsel replied, "I haven't, Your honor." Counsel elaborated that he had spoken to Coomes for the first time that day and had just filed motions for discovery and for preparation of the transcript from the original trial. When asked by the court whether he would be ready for a pretrial hearing soon, defense counsel replied, "Once I get discovery and have a chance to go through that, which I don't think it would be too much of an issue, I could get things moving towards pretrial." Based on this information, the court set the next status hearing for April 7, with the expectation that a pretrial date would be set at that time.

This evidence supports the trial court's specific factual finding that Coomes' new defense counsel "needed time to be brought up to speed on [Coomes'] case to provide him with a proper defense." On this record, there is no clear error in the trial court's determination that the circumstances provided a substantial reason affording a legal excuse for the delay[44] and therefore supported a finding of good cause under § 29-1207(4)(f) to exclude the period of delay from February 11 to April 7, 2020. This resulted in 56 days of excluded time.

Because of our conclusion regarding good cause, it is unnecessary to address the State's alternative argument that the period from March 10 through April 7, 2020, is also properly excludable under § 29-1207(4)(b) as a period of delay resulting from a continuance granted with the consent of Coomes' counsel. However, because the State also argues that the period between April 7 and May 12 is excludable under § 29-1207(4)(b), we consider that argument next.

---

[44] See *Kolbjornsen, supra* note 31.

### *(iii) April 7 to May 12, 2020*

In its order denying absolute discharge, the district court did not consider the excludability of any period after April 7, 2020. On appeal, the State argues that the period from April 7 to May 12 is properly excluded under § 29-1207(4)(b) as a period of delay resulting from a continuance granted with the consent of Coomes' counsel. We agree.

As an initial matter, we reject Coomes' suggestion that we cannot consider the excludability of this time period because the State did not file a cross-appeal. We have held that "[a] cross-appeal must be properly designated, pursuant to [our appellate rules], if affirmative relief is to be obtained."[45] We have described "[a]ffirmative relief" as "a reversal, vacation, or modification of a lower court's judgment, decree, or final order."[46] But here, the State is not seeking a reversal, vacation, or modification of the lower court's order.

[19] It is not unusual for our speedy trial opinions to consider excludable periods that differ from those considered by the trial court.[47] And in an appeal from the denial of a motion for absolute discharge, the State as appellee does not request affirmative relief by arguing that additional periods of delay, which were neither considered nor ruled upon by the district court, are also properly excludable. The absence of a cross-appeal in this case does not preclude us from considering whether the record supports additional excludable periods.[48]

[20] At the status hearing on April 7, 2020, the State made an oral motion to continue the matter for "a month down

---

[45] *State v. Bishop*, 263 Neb. 266, 274, 639 N.W.2d 409, 416 (2002).

[46] *Id.*

[47] See, e.g., *State v. Billingsley, ante* p. 616, ___ N.W.2d ___ (2021) (affirming denial of absolute discharge on grounds different than considered by trial court). Accord *Kolbjornsen, supra* note 31 (rejecting defendant's argument that appellate court could not consider speedy trial issues under separate statute applicable to in-state prisoners because trial court applied only § 29-1207).

[48] See *Billingsley,* supra note 47.

the road" and Coomes' counsel responded, "Judge that's fine with me." The court then set the matter for a status hearing on May 12. As such, the period from April 7 to May 12 is a classic example of a "delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel,"[49] and it is properly excluded from the speedy trial calculation. We have explained that excludable time for a continuance begins the day after the continuance is granted and includes the day on which the continuance ends.[50] As such, this excludable period began on April 8 and ended on May 12, resulting in another 35 excludable days.

### (b) Speedy Trial Calculation

Having considered the arguments of the parties regarding excludable time, we find this leaves only a calculation of the total number of days properly excluded. As explained, the speedy trial clock restarted when the mistrial was declared on September 12, 2019, so in the absence of excludable time, Coomes should have been brought to retrial by March 12, 2019.

There were 87 excludable days from October 22, 2019, to January 11, 2020, and 91 excludable days between February 11 and May 12, 2020, for a total of 178 excludable days. Adding 178 days to March 12, 2020, we arrive at September 6, 2020, which was a Sunday, so the State had until Monday, September 7, to bring Coomes to trial.

When Coomes filed his motion for absolute discharge on August 10, 2020, the speedy trial deadline had not yet expired. Since there was no statutory speedy trial violation, the district court properly overruled Coomes' motion. Moreover, because Coomes' motion for absolute discharge resulted in continuing a timely retrial to a date outside the statutory 6-month period, he has permanently waived his statutory speedy trial

---

[49] See § 29-1207(4)(b).

[50] *Lovvorn, supra* note 42.

rights under § 29-1207(4)(b) and this court's holding in *State v. Mortensen*.[51]

## V. CONCLUSION

For the foregoing reasons, we conclude that the district court did not clearly err in denying Coomes' motion for absolute discharge. Accordingly, we affirm.

Affirmed.

Miller-Lerman, J., participating on briefs.
Heavican, C.J., not participating.

---

[51] See *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014).

Freudenberg, J., concurring.

I agree with the analysis and holding of the majority opinion. I write separately to address a period of time that such opinion did not find necessary to reach in its statutory speedy trial discussion. The majority found that sufficient speedy trial time remained without the need to address the period of time between the pretrial hearing on June 9 and when Coomes filed his motion for absolute discharge on August 10, 2020. It is my belief that the period between the pretrial conference and the August 17 trial date would not have counted against the State in the statutory speedy trial analysis.

The State, Coomes, and his counsel all appeared at the June 9, 2020, pretrial conference. At that time, the district court discussed possible trial dates with the parties. Both counsel agreed the suggested August 17 trial date was acceptable. The district court also directly inquired of Coomes, "Does that [date] work for you . . . ?" Coomes responded, "Yes it does." The district court then set the trial date, in accordance with the consent of the parties, to begin on August 17. Coomes filed his motion to discharge on August 10.

Previously, this court has generally addressed as part of a statutory speedy trial analysis the period of time between the trial scheduling date and the date the trial begins. In *State v.*

*Alvarez*, 189 Neb. 281, 291-92, 202 N.W.2d 604, 610 (1972), we said:

> A failure by a defendant to demand a trial within the time he is required to be brought to trial as provided by sections 29-1205 to 29-1209, R. S. Supp., 1971, or to object at the time trial date is set does not constitute a waiver of his [statutory speedy trial] rights . . . .

In *State v. Kinstler*, 207 Neb. 386, 390-91, 299 N.W.2d 182, 185-86 (1980), we clarified our position:

> In a series of decisions rendered by this court since the enactment of the speedy trial laws by the Legislature of the State of Nebraska, we have announced that the primary burden is upon the State to bring the accused person to trial within the time provided by law and that, if he is not brought to trial within that time, he is entitled to an *absolute discharge* from the offense alleged, in the absence of an express waiver or waiver as provided by statute. Moreover, we have held that the failure of the accused to object at the time the trial court enters an order setting the trial at a date after the 6-month period does not constitute a waiver of his statutory right to a speedy trial and, further, we have held that, if a portion of the statute is to be tolled by reason of one of the exceptions in the statute, the State has the burden of proving . . . that such exception is applicable.

Section 29-1207 sets forth: "(4) The following periods shall be excluded in computing the time for trial: . . . (b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel." Such exception is applicable to our analysis here.

While the holdings of *Alvarez* and *Kinstler* are instructive, both are factually distinguishable from the present matter. In *Alvarez*, the record was silent on whether the defendant or his counsel consented to the setting of the trial date. In *Kinstler*, the motion to discharge was filed and granted prior to the setting of a trial date.

Here, the record clearly shows that both Coomes and his counsel were asked by the district court about the identified trial date and both agreed to the continuance to that date. This was not mere passive acceptance of a trial date, but an agreement on the record by both parties to the delay.

Section 29-1207(4)(b) does not limit the excludable period of delay to "motions," at the request of or with the consent of the defendant, for continuance of a trial date previously set. It refers more broadly to "a continuance." I view this "continuance" in light of the prior language of § 29-1207(1) that every defendant shall be brought to trial within 6 months and that "such time shall be computed as provided in this section." When reading a statute, what it does not say is often as important as what it does say, and the whole and every part of the statute must be considered in fixing the meaning of any of its parts. See *Robinson v. Houston*, 298 Neb. 746, 905 N.W.2d 636 (2018). Viewing § 29-1207 as a whole, I believe § 29-1207(4)(b) refers to any delay or postponement of the 6-month statutory period that has been requested by or consented to by the defendant or defense counsel.

When a trial court is able to ascertain that a proposed trial date will fall outside the statutory period, I would continue to encourage trial courts, in accordance with *State v. Johnson*, 201 Neb. 322, 268 N.W.2d 85 (1978), *overruled on other grounds, State v. Petty*, 269 Neb. 205, 691 N.W.2d 101 (2005), to advise the defendant thereof and ascertain on the record whether the defendant waives the right to a speedy trial and consents to the trial date set. But such an express waiver of the right to a speedy trial is not a condition to exclusion from computation, under § 29-1207(4)(b), of the period of time between the defendant's consent to a trial date and the date consented to.

Even if we did not view a stated acquiescence to the setting of a trial date as a continuance with the consent of the defendant under the plain language of § 29-1207(4)(b), it is inappropriate for a defendant to gain advantage from a violation

when the defendant was a party to that violation. See *State v. Brown*, 307 Md. 651, 516 A.2d 965 (1986). A defendant ordinarily cannot invite an error and then complain of it. See *State v. Williams*, 212 Neb. 860, 326 N.W.2d 678 (1982).

As such, the record clearly establishes by a greater weight of the evidence that the period between June 9 and August 17, 2020, was a period of delay granted with the consent of Coomes and his counsel which would further toll the statutory speedy trial clock. To find otherwise would allow Coomes to benefit from invited error. I believe we should have addressed such period of time, and therefore, I concur with the majority opinion.