Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/24/2021 08:10 AM CDT

**State of Nebraska, appellee, v.
Joshua J. Brown, appellant.**

___ N.W.2d ___

Filed September 24, 2021.    No. S-20-812.

1. **Judgments: Speedy Trial: Appeal and Error.** Generally, a trial court's
   determination as to whether charges should be dismissed on speedy trial
   grounds is a factual question which will be affirmed on appeal unless
   clearly erroneous.
2. **Speedy Trial.** To calculate the time for statutory speedy trial purposes,
   a court must exclude the day the complaint was filed, count forward 6
   months, back up 1 day, and then add any time excluded under Neb. Rev.
   Stat. § 29-1207(4) (Reissue 2016) to determine the last day the defend-
   ant can be tried.
3. **Speedy Trial: Proof.** When calculating the time for speedy trial pur-
   poses, the State bears the burden to show, by a preponderance of the
   evidence, the applicability of one or more of the excluded time periods
   under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016).
4. **Speedy Trial: Good Cause: Words and Phrases.** "Good cause," for
   purposes of Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016), means a
   substantial reason and one that affords a legal excuse.
5. **Good Cause.** Good cause is a factual question dealt with on a case-by-
   case basis.
6. **Good Cause: Proof.** A district court's good cause findings must be
   supported by evidence in the record, and the State bears the burden of
   establishing facts showing that good cause existed.
7. **Speedy Trial: Good Cause: Motions for Continuance.** When a trial
   court's sua sponte decision to delay trial implicates statutory speedy trial
   rights, the exclusion of the period attributable to such delay is governed
   by a showing on the record of good cause as described by Neb. Rev.
   Stat. § 29-1207(4)(f) (Reissue 2016).
8. **Speedy Trial: Good Cause.** Evidence of good cause is properly pre-
   sented at the hearing on the motion for absolute discharge and need not
   be articulated at the time of the court's sua sponte order delaying trial.

9. **Speedy Trial: Good Cause: Appeal and Error.** In determining whether the trial court clearly erred in finding good cause after a hearing on a motion for discharge, an appellate court looks not just to the evidence presented at the hearing on the motion to discharge but to the whole of the record.

10. **Speedy Trial.** The only timing requirement implicit in Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016) is that the substantial reason affording a legal excuse objectively existed at the time of the delay.

11. **Speedy Trial: Good Cause.** When a trial court relies on Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016) to exclude time from the speedy trial calculation, a general finding of "good cause" will not suffice. Instead, the court must make specific findings as to the good cause which resulted in the delay.

12. **Constitutional Law: Speedy Trial.** Determining whether a defendant's constitutional right to a speedy trial has been violated requires application of a balancing test that involves consideration of four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, the factors are related and must be considered together with other circumstances as may be relevant.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Robert G. Hays for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## NATURE OF CASE
Joshua J. Brown appeals the order of the district court for Lancaster County which overruled his motion for absolute discharge wherein he alleged violations of his constitutional and statutory rights to a speedy trial. Brown claims on appeal

that the district court erred when, inter alia, it concluded that continuances ordered by the court in response to the COVID-19 pandemic were for good cause and therefore should be excluded from the calculation of the time for bringing him to trial. We affirm the district court's order which overruled Brown's motion for discharge.

## STATEMENT OF FACTS

On October 31, 2019, the State filed an information charging Brown with first degree assault, a Class II felony under Neb. Rev. Stat. § 28-308 (Reissue 2016). On November 19, Brown filed motions for discovery and to allow taking of depositions, and the court sustained the motions on December 10.

The court originally set the trial for its February 3, 2020, term. On January 29, the State filed a motion to continue the trial. At a hearing on the motion, the State explained that the reason for the request was that the State had recently learned the alleged victim had moved out of state and additional time was needed to arrange for her to be in Nebraska for the trial. Brown objected and stated that he was ready for trial. The court sustained the State's motion over Brown's objection and continued trial to the April 6 term.

Brown filed several pretrial motions on March 18, 2020, and requested a hearing to be held on March 23. However, Brown withdrew the motions on March 23 because, in an order filed that day, the district court continued the trial until the June 8 term.

In the March 23, 2020, order, the court stated as the reason for the continuance "current public safety concerns surrounding the COVID-19 pandemic." The court noted recent declarations regarding the pandemic by the World Health Organization, the Chief Justice of the Nebraska Supreme Court, the Governor of Nebraska, the President of the United States, and the mayor of the city of Lincoln. The court stated that the State of Nebraska, Lancaster County, and the city of Lincoln were or soon would be "experiencing a COVID-19 outbreak via community transmission." The court further noted

that the Nebraska Department of Health and Human Services, in accordance with guidelines issued by the federal Centers for Disease Control and Prevention (CDC), advised that in order to mitigate spread of the illness, social gatherings of groups of 10 or more people should be avoided, social distancing of 6 feet should be practiced, and people should avoid congregating in enclosed spaces. The court stated that "[m]any people have chronic medical conditions that make them especially vulnerable to the severe consequences of COVID-19" and that "[a]ll efforts should be utilized to mitigate the exposure and spreading of the illness." Based on these concerns, the court found that pursuant to Neb. Rev. Stat. § 29-1207(4)(f) (Reissue 2016), "good cause" existed to continue the trial until the June 8 term, and it stated that "[t]he period of time between this order and [Brown's] next court appearance shall not count against the State of Nebraska in its duty to bring [Brown] to trial within six months of the filing of the Information." Brown filed an objection to the continuance on March 26, and he further objected to the court's finding of good cause and its determination that the time would not count against the statutory 6 months for bringing him to trial. See § 29-1207(1).

On May 13, 2020, the court set Brown's trial for June 8 and ordered Brown to appear for a pretrial conference on May 29. However, on May 29, the court entered an order continuing the trial until the August 3 term. The court again cited "current public safety concerns surrounding the COVID-19 pandemic" as the reason for the continuance.

In the May 29, 2020, order the court stated that it had "been carefully monitoring the ongoing local and national emergency occasioned by the worldwide COVID-19 pandemic," and it noted that Nebraska had recently "led the nation in percentage growth in newly confirmed cases of COVID-19." The court cited statements by the Lincoln/Lancaster County Health Department (Health Department) to the effect that the risk of spread of COVID-19 was high and that the trajectories of confirmed cases and of positive tests as a percentage of total

tests were both trending upward. The court also noted that the Health Department cautioned that exposure to COVID-19 presented a substantial risk of death or serious long-term disabilities to the general population and an increased risk to vulnerable members of the population.

The court stated that it had been in frequent consultation with public health professionals to develop plans to return to normal operations, including jury trials, while maintaining public safety for building and court staff, litigants, attorneys, witnesses, and jurors. The court also noted directed health measures issued by the Health Department that were not binding on the court but that were persuasive and provided excellent guidance. The court noted that such measures continued to impose a 10-person limit on gatherings and a requirement of maintaining a 6-foot distance between persons gathering in groups of less than 10. The court stated that the health and safety of individuals in its courthouse was a "very high priority," and it concluded that conducting a jury trial at the current time and under the current circumstances would be inconsistent with directed health measures and would jeopardize the health and safety of individuals in the courtroom. As it had done when ordering a continuance on March 23, 2020, the court again found that pursuant to § 29-1207(4)(f), good cause existed to continue the trial until the August 3 term, and it stated that the period of delay would not count against the time to bring Brown to trial within 6 months.

On July 31, 2020, Brown filed a motion for absolute discharge on speedy trial grounds. Brown asserted violations of his statutory right to trial within 6 months under § 29-1207 and Neb. Rev. Stat. § 29-1208 (Reissue 2016) and of his constitutional right to a speedy trial under the federal and Nebraska Constitutions. In the motion, Brown stated that 6 months following the filing of the information was May 1, but he conceded that the time had been extended to May 27, based on the discovery motions and other pretrial motions he had filed. He stated that the time was extended 21 days for the

discovery motions filed November 19, 2019, and sustained on December 10 and that the time was extended another 5 days for the pretrial motions he filed on March 18, 2020, and withdrew on March 23. However, Brown contended that no other delays were caused by him and that there was no good cause for delaying trial beyond May 27. He asserted that neither the continuance granted by the court on the State's motion to continue trial to April 6 nor the two orders on the court's own motion continuing the trial to June 8 and later to August 3 extended the time for bringing the case to trial. In regard to the continuances ordered on the court's own motion based on public health concerns related to the COVID-19 pandemic, Brown noted administrative orders issued by the Chief Justice of the Nebraska Supreme Court on April 6 and on June 30 which stated, inter alia, that courts would continue to remain open during the public health emergency declared as a result of the COVID-19 pandemic.

After an evidentiary hearing—the evidence which we describe in our analysis below—the district court, on November 9, 2020, overruled Brown's motion for discharge and ordered the case to be set for the next jury term. In its order, the court agreed with Brown's calculation that 6 months after October 31, 2019, was May 1, 2020, and that delays caused by Brown's discovery and pretrial motions extended the speedy trial time by 26 days to May 27. However, the court also found that the delay resulting from its March 23 and May 29 orders continuing trial based on public health concerns related to the COVID-19 pandemic should extend the time for trial pursuant to § 29-1207(4)(f), which requires exclusion for "[o]ther periods of delay not specifically enumerated in this section, but only if the court finds that they are for good cause."

The court reviewed the bases for its orders continuing the trial, including the declarations of various officials in March 2020 and the directed health measures and other guidance issued by the Health Department, the CDC, and the Nebraska Department of Health and Human Services. The court took

judicial notice of general orders entered by the district court for Lancaster County during the relevant time periods. The court indicated that such general orders were entered after the Nebraska Supreme Court entered an administrative order that declared, inter alia, that courts "'shall devise and implement emergency preparedness plans to carry out mission essential functions.'"

The court also stated the following:

The novel coronavirus, COVID-19 is a virus that is readily transmitted both directly and indirectly from one individual to another and has been found to create a risk of death to certain individuals or cause significant health related issues. The sudden onset of the pandemic left unanswered many questions regarding measures to prevent its spread and the logistics regarding conducting business in a public forum. Issues regarding personal protection equipment, adequate facilities and safety protocols for the judiciary and the public had yet to be developed or instituted within the 12 days of the declaration of the pandemic and the commencement of the jury term.

As the pandemic spread, the impact was felt significantly by the citizens of Lancaster County. The Court's order of May 29, 2020 highlights the community's concerns as expressed by the . . . Health Department. The safety concern of all individuals involved in the jury trial process was paramount. There was simply no courtroom available to the bench that could accommodate 30 - 35 people to be adequately screened and socially distanced for jury selection. Additionally, any offsite venue was not adequately equipped with the appropriate technology and presented security concerns for the Court, parties, staff and jurors.

In considering the statutory factors, the court stated it "strongly disagree[d]" with Brown's argument that good cause did not exist, reiterated its findings from the continuance orders, and concluded that good cause existed pursuant to

§ 29-1207(4)(f). The court determined that the continuances related to the COVID-19 pandemic extended the time for speedy trial by a total of 100 days and that when combined with the 26-day extension generated by Brown's motions, the 6-month period was extended from May 1, 2020, until September 3. Because these exclusions extended the time past July 31, when Brown filed his motion for discharge, the court did not address whether the delay resulting from the continuance ordered on the State's January 29 motion further extended the time. The court concluded that Brown's motion for discharge pursuant to §§ 29-1207 and 29-1208 should be overruled.

The court also considered Brown's constitutional right to a speedy trial. The court cited precedent to the effect that analysis of the constitutional right required a balancing of four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. The court further cited precedent to the effect that "'[t]he length of the delay is to some extent a triggering mechanism'" and that "'until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" (Quoting *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). The court noted that Brown had not been in custody throughout the proceedings, and it concluded that under the circumstances, the length of delay caused by the pandemic and the court's ability to adjust to the pandemic was not presumptively prejudicial. The court therefore concluded that Brown's constitutional right to a speedy trial under the federal and Nebraska Constitutions had not been violated and that his motion for discharge based on the constitutional right to a speedy trial should be overruled.

Brown appeals the order overruling his motion for discharge.

## ASSIGNMENTS OF ERROR

Brown claims that the district court erred when it overruled his motion for discharge because the continuances ordered

for reasons related to the COVID-19 pandemic were not shown to be for good cause and therefore his statutory right to a speedy trial was violated. Brown also claims that the delays violated his federal and Nebraska constitutional rights to a speedy trial.

## STANDARD OF REVIEW

[1] Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Billingsley*, 309 Neb. 616, 961 N.W.2d 539 (2021).

## ANALYSIS

*District Court Did Not Err When It Found Good Cause*
*for Pandemic-Related Continuances and When It*
*Concluded That Brown's Statutory Right to*
*Speedy Trial Had Not Been Violated.*

Brown first claims that the district court erred when it rejected his argument that he was entitled to absolute discharge because the State had violated his statutory right to a speedy trial. He claims that the court erred when it found that the continuances the court had previously ordered due to the COVID-19 pandemic were issued for good cause under § 29-1207(4)(f). Brown contends that in the absence of evidence offered by the State, the previous continuances based solely on the court's own statements regarding the pandemic were erroneous. Given the evidence adduced at the hearing on the motion for discharge, we determine that the findings of good cause were not clearly erroneous at the time they were issued. We therefore conclude that the court did not err when it overruled Brown's motion for discharge on statutory speed trial grounds.

The statutory right to a speedy trial is set forth in §§ 29-1207 and 29-1208. Section 29-1208 provides that if a defendant is not brought to trial within the time provided for in § 29-1207, as extended by excluded periods, the defendant will be

entitled to absolute discharge from the charged offense. Under § 29-1207(1), "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." Section 29-1207(2) generally provides that the "six-month period shall commence to run from the date the indictment is returned or the information filed." Certain periods of delay are excluded from the speedy trial calculation. As relevant to this case, § 29-1207(4)(a) excludes all time between the time of the filing of a defendant's pretrial motions and their final disposition; § 29-1207(4)(c) excludes certain periods of delay "resulting from a continuance granted at the request of the prosecuting attorney"; and § 29-1207(4)(f) provides that other periods of delay not specifically enumerated in the statute may be excluded in the speedy trial computation, "but only if the court finds that they are for good cause."

[2] As an initial matter, the State argues that both Brown and the district court erred when—without regard to any excludable periods—they calculated that the 6-month statutory period would have ended on May 1, 2020. To calculate the time for statutory speedy trial purposes, "'a court must exclude the day the complaint was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.'" *State v. Billingsley*, 309 Neb. 616, 620, 961 N.W.2d 539, 542 (2021). The State asserts that using this formula, before adding any excluded time, the last day for trial would have been April 30 rather than May 1. In effect, the State argues the district court and Brown failed to "back up 1 day" from May 1 to April 30. See brief for appellee at 16. We agree that the original 6-month period would have run on April 30.

Brown and the State both agree with the exclusion of 26 days related to Brown's motions. Adding that time brought the last date for trial to May 26, 2020. Brown argues that no additional time was excludable and that therefore, the district court should have sustained his motion for absolute discharge filed

on July 31. The district court, however, found that an additional period of 100 days was excludable for the good cause continuances it ordered related to the COVID-19 pandemic. The court determined that such exclusion extended the time for bringing Brown to trial more than a month past July 31, when Brown filed his motion for discharge. Brown argues that the court erred when it found such delay excludable, because the State did not meet its burden to show that the continuances were for good cause under § 29-1207(4)(f).

[3-5] The State bears the burden to show, by a preponderance of the evidence, the applicability of one or more of the excluded time periods under § 29-1207(4). *State v. Billingsley, supra*. "Good cause," for purposes of § 29-1207(4)(f), is not defined by statute, but we have found it fitting to apply the meaning for "good cause" that we have used in other contexts, which is that "good cause" means a substantial reason and one that affords a legal excuse. See *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021). We have also recognized that good cause is a factual question dealt with on a case-by-case basis. See *id*.

[6-10] A district court's good cause findings must be supported by evidence in the record, and the State bears the burden of establishing facts showing that good cause existed. *Id.* When a trial court's sua sponte decision to delay trial implicates statutory speedy trial rights, the exclusion of the period attributable to such delay is governed by a showing on the record of good cause as described by § 29-1207(4)(f). *State v. Chase, ante* p. 160, ___ N.W.2d ___ (2021). We have recently explained that the evidence of good cause is properly presented at the hearing on the motion for absolute discharge and need not be articulated at the time of the court's sua sponte order delaying trial. *Id*. The burden under § 29-1207(4)(f) is simply that there be "good cause." *State v. Chase, supra*. In determining whether the trial court clearly erred in finding good cause after a hearing on a motion for discharge, we look not just to the evidence presented at the hearing on the motion to

discharge but to the whole of the record. *Id*. The only timing requirement implicit in § 29-1207(4)(f) is that the substantial reason affording a legal excuse objectively existed at the time of the delay. *State v. Chase, supra*.

Brown argues that the court erred when it found good cause for the continuances because the State presented no evidence to support a finding of good cause. It is not clear whether Brown's argument focuses on the court's finding of good cause following the hearing on the motion for discharge or the court's initial findings of good cause at the time it originally ordered the continuances. We note in this regard that the State did not offer evidence in support of the continuances at the time they were ordered, because the continuances were ordered sua sponte by the court and not granted on the State's motion. However, the State did present evidence at the hearing on Brown's motion to discharge, and therefore it would not be accurate to say that the State presented no evidence with regard to good cause. Regardless, as the standards set forth above make clear, the proper time for the State to present evidence of good cause is at the hearing on the motion for absolute discharge, and even though it is necessary that the substantial reason affording a legal excuse objectively existed at the time of the delay, good cause need not be articulated at the time of the court's sua sponte order delaying trial. See *State v. Chase, supra*. Although the district court in this case articulated its reasons for finding good cause at the time it ordered the continuances, our review of whether the State met its burden focuses on the evidence presented to the court at the time of the hearing on the motion for discharge and whether that evidence supported the court's finding that good cause existed at the time of the delays. In doing so, we look not just to the evidence presented at the hearing on the motion to discharge, but to the whole of the record. See *State v. Chase, supra*.

[11] When a trial court relies on § 29-1207(4)(f) to exclude time from the speedy trial calculation, we have said that a general finding of "good cause" will not suffice. *State v.*

*Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021). Instead, the court must make specific findings as to the good cause which resulted in the delay. *Id*. An appellate court will give deference to such factual findings unless they are clearly erroneous. *Id*.

At the hearing on the motion for discharge, the State presented evidence, including, inter alia, the court's March 23 and May 29, 2020, continuance orders and newspaper articles regarding restrictions imposed by the Lancaster County District Court related to the pandemic. At the hearing, the court took judicial notice of general orders issued by the Lancaster County District Court related to the pandemic. In its order ruling on the motion to discharge, the court took note of various other orders and declarations of public officials and directives of health agencies such as the Health Department and the CDC. Brown presented evidence of the Nebraska Supreme Court orders in April and June 2020 to the effect that judicial mission essential functions shall be implemented.

The court's order on the motion for discharge indicates that, in addition to the evidence presented by the parties, the court took judicial notice of certain facts to support the finding that there existed good cause for the continuances when issued. Neb. Rev. Stat. § 27-201 (Reissue 2016) allows a court to take judicial notice of adjudicative facts. Section 27-201(2) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Section 27-201(3) provides that "[a] judge or court may take judicial notice, whether requested or not." Section 27-201(6) provides that "[j]udicial notice may be taken at any stage of the proceeding."

In this regard, we note *State v. Estrada Comacho*, 309 Neb. 494, 960 N.W.2d 739 (2021), in which we addressed a criminal defendant's challenge based on the constitutional right of confrontation to the trial court's ruling which allowed

testimony via two-way video by a witness who had tested positive for COVID-19. We stated that in its analysis, the trial court had "noted that the Nebraska Supreme Court had issued orders and guidelines in response to the COVID-19 pandemic and effectively took judicial notice of such orders and guidelines, as it could do." *State v. Estrada Comacho*, 309 Neb. at 501, 960 N.W.2d at 747. In stating that the court could take judicial notice of the orders and guidelines, we cited to § 27-201(2) and (6), which state that a "judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned . . . at any stage of the proceeding."

In this case, the court took judicial notice of various pronouncements by public officials and directives issued by health agencies. These contained adjudicative facts subject to judicial notice under § 27-201(2) providing that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Facts related to the course and effects of the COVID-19 pandemic relied on by the court were not subject to reasonable dispute because such facts were set forth in public pronouncements and directives which were "sources whose accuracy cannot reasonably be questioned." See *id.* Furthermore, such facts were of the sort that were "generally known within the territorial jurisdiction of the trial court." See *id.* We disagree with Brown's assertion that these facts were based only on the court's personal knowledge. Although the court may have had personal knowledge of the circumstances, such knowledge was also generally known within the territorial jurisdiction of the court. This case may be contrasted to a case like *State v. Torres*, 28 Neb. App. 758, 948 N.W.2d 288 (2020), wherein the Nebraska Court of Appeals determined it was error for the court to take judicial notice of the court's

bailiff's typical procedures. Such procedures may have been within the court's personal knowledge, but such procedures were not "generally known within the territorial jurisdiction of the trial court." See § 27-201(2). Relevant facts relied on by the court in this case relating to the COVID-19 pandemic were generally known in Lancaster County, which is the court's territorial jurisdiction.

Considering the evidence that was presented at the hearing on the motion to discharge and the facts of which the district court properly took judicial notice, we conclude that the district court's finding of good cause for the continuances when made was not clearly erroneous. The circumstances entailed by the pandemic were such that the court could find "'good cause'" in the sense of "'"a substantial reason . . . that affords a legal excuse."'" See *State v. Coomes*, 309 Neb. 749, 765, 962 N.W.2d 510, 522 (2021). We note that our determination in this respect considers the context of the COVID-19 pandemic circumstances and conditions that existed at the time the continuances were ordered. See *U.S. v. Olsen*, 995 F.3d 683, 693 (9th Cir. 2021) (applying federal speedy trial act and its exclusion of time for "ends of justice" and stating that "surely a global pandemic . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health"). See, also, *State v. Estrada Comacho*, 309 Neb. 494, 515, 960 N.W.2d 739, 755 (2021) (in context of constitutional right of confrontation, determining that "preventing the spread of COVID-19 was an important public policy" and stating that "district court's decision [to allow testimony by two-way video] must be viewed in the context of the time when the trial took place, which was July 2020"). We believe that in the context and under the circumstances in which the court ordered the continuances in March and May 2020, the court's finding that such continuances were for good cause is not clearly erroneous.

For completeness, we note that the State also argues that the court should have excluded the period of delay due to the

continuance granted on the State's January 29, 2020, motion. However, the district court did not consider whether this time was excludable, because exclusion of the delays related to the good cause continuances occasioned by COVID-19 took the time for trial more than 1 month past the July 31, 2020, date on which Brown filed his motion for discharge. For the same reason, we need not consider whether such time was excludable.

Contrary to Brown's assertion of error, we conclude that the district court did not err when it found good cause for the continuances related to the COVID-19 pandemic. We therefore conclude that the district court did not err when it overruled Brown's motion for discharge based on statutory speedy trial grounds.

*District Court Did Not Err When It Concluded Delays*
*Did Not Violate Brown's Federal and Nebraska*
*Constitutional Rights to Speedy Trial.*

Brown next claims that the district court erred when it determined that the delays related to the COVID-19 pandemic did not violate his federal and Nebraska constitutional rights to a speedy trial. Applying a balancing test weighing the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant, we conclude that the district court did not err when it determined that Brown's federal and Nebraska constitutional rights to a speedy trial had not been violated and when it rejected his motion to discharge on constitutional speedy trial grounds.

[12] The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11. Determining whether a defendant's constitutional right to a speedy trial has been violated requires application of a balancing test first articulated by the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). That test involves consideration of four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's

assertion of the right, and (4) prejudice to the defendant. See, *id*.; *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019). None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016), *abrogated on other grounds, State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). Rather, the factors are related and must be considered together with other circumstances as may be relevant. *Id*.

Applying the balancing test, we determine that Brown's constitutional right to a speedy trial was not violated. First, the length of delay does not support a determination that Brown's constitutional right to a speedy trial was violated. While the constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other, we have recognized that § 29-1207 provides a useful standard for assessing whether the length of a trial delay is unreasonable under the U.S. and Nebraska Constitutions. *State v. Lovvorn, supra*. We have observed that it is an unusual case in which the constitutional right to a speedy trial has been violated when the time limits under the speedy trial act have been met. See *State v. Lovvorn, supra*. Brown filed his motion to discharge on July 31, 2020, which was 9 months after October 31, 2019, when the information was filed. As we determined above, after adding excluded time to the 6-month limit under the speedy trial statute, time remained on the statutory speedy trial clock.

The reason for the delay also does not favor Brown's argument. Regarding the reason for delay, the U.S. Supreme Court distinguished between a "deliberate attempt to delay the trial in order to hamper the defense" which "should be weighted heavily against the government" and "a valid reason" for which some delay is justified. *Barker v. Wingo*, 407 U.S. at 531. In this case, there is no indication that the State was deliberately attempting to delay the trial to hinder Brown's defense. Instead, the excluded times under the statutory speedy trial were attributed to delays caused by pretrial motions filed by

Brown, which clearly do not weigh against the State, and to delays caused by the court's sua sponte good cause continuations for reasons related to the COVID-19 pandemic. For the same reasons we determined above that the pandemic-related delays were for "good cause" under the statutory analysis, we also determine that the delays were for a "valid reason" for purposes of the constitutional analysis.

With regard to the third *Barker* factor, i.e., defendant's assertion of the right, the State does not dispute that Brown asserted his right to a speedy trial when he objected to the court's first continuance and when he filed his motion to discharge. This factor favors Brown, but it must be weighed against the other factors, which generally weigh against a finding that Brown's speedy trial rights were violated.

Regarding the final *Barker* factor, i.e., prejudice to the defendant, the U.S. Supreme Court stated that the prejudice factor is to be assessed "in the light of the interests of defendants which the speedy trial right was designed to protect," and it set forth three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532. Brown does not identify how delay in this case affected these interests, and the State notes that the record indicates that Brown was not incarcerated at relevant times prior to his filing the motion for discharge.

After weighing the four *Barker* factors, we conclude that this is not the unusual case in which there was no statutory speedy trial violation but there was a constitutional speedy trial violation. Although we recognize that Brown asserted his right to a speedy trial by objecting to the court's first continuance, the other factors weigh against a determination that Brown's constitutional right to a speedy trial was violated. We conclude that the court did not err when it overruled Brown's motion for discharge based on the alleged violation of his federal and Nebraska constitutional rights to a speedy trial.

## CONCLUSION

We conclude that neither Brown's statutory nor his federal or state constitutional right to a speedy trial was violated. We therefore conclude that the district court did not err when it overruled Brown's motion for discharge, and we affirm the district court's order.

Affirmed.

Heavican, C.J., not participating.