IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCAULIFFE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID B. MCAULIFFE, APPELLANT.

Filed December 28, 2021.    No. A-21-373.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Thomas P. Strigenz, Sarpy County Public Defender, and Matthew Strigenz for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

INTRODUCTION

David B. McAuliffe filed a motion to discharge in the district court for Sarpy County, alleging violations of his statutory and constitutional rights to a speedy trial. The court denied McAuliffe's motion, and he appeals. On appeal, McAuliffe only challenges the court's denial of his motion on constitutional speedy trial grounds. Finding no error, we affirm.

STATEMENT OF FACTS

On February 10, 2020, the State filed an information in the district court, charging McAuliffe with first degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016), a Class IB felony; incest (victim under 18) in violation of Neb. Rev. Stat. § 28-703 (Reissue 2016), a Class IIA felony; and third degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 2016), a Class IIIA felony. The State also charged McAuliffe with being a habitual criminal in violation of Neb. Rev. Stat. § 29-2221

- 1 -

(Reissue 2016). On February 14, 2020, the district court scheduled McAuliffe's jury trial for June 16, 2020, as the "1st backup case."

On April 17, 2020, McAuliffe filed a motion for discovery, relating to any forensic interviews that had been conducted of endorsed witnesses. The district court entered an order ruling on the motion on May 13.

On June 12, 2020, McAuliffe filed a motion to continue the trial scheduled for June 16. The court granted McAuliffe's motion that same day and rescheduled trial for September 8.

On August 13, 2020, the State filed a second amended information, amending the charging timeframe for the counts in the original information. The State also added three counts with respect to a second child victim; first degree sexual assault of a child, incest (victim under 18), and third degree sexual assault of a child.

On August 30, 2020, the State filed a motion to continue the trial scheduled for September 8 due to the unavailability of material evidence for the State. The State attached affidavits from the prosecutor and two of its witnesses, both of whom were endorsed as witnesses on the second amended information. In her affidavit, the prosecutor stated that both witnesses were material witnesses and would testify to material evidence for the State, that she had served them both with notices to appear at the September 8 trial, and that she had received affidavits from both stating that they would be unavailable on that date. One witness stated in her affidavit that she would be out of state on September 8 but would return to active duty at Project Harmony on September 9. The other witness stated in her affidavit that she would be out of state on September 8 but would return to active duty at the Bellevue Police Department on September 10.

On September 1, 2020, prior to a ruling by the district court on the State's motion to continue trial, McAuliffe filed a plea in abatement.

On September 2, 2020, a hearing was held via videoconference to address pending motions, including the State's motion to continue and McAuliffe's plea in abatement. In support of its motion, the State offered the affidavits of the unavailable witnesses. McAuliffe did not object to the district court's receipt of the exhibits, but he did object to the continuance. At the hearing, the court stated that it was "probably going to continue" the trial date and that it would enter an order with the new trial date and with an additional hearing date for McAuliffe's plea in abatement to give time for completion of a transcript of the preliminary hearing. In an order filed on September 4, the court noted that a hearing on McAuliffe's plea in abatement would be held at a later date once McAuliffe obtained the transcript and ordered that the hearing was to be scheduled by McAuliffe. The court also granted the State's motion to continue and rescheduled trial for December 15. Subsequently, the court overruled McAuliffe's plea in abatement in an order entered on October 16.

On December 2, 2020, the State filed a motion to continue the December 15 trial date because of the unavailability of material evidence for the State. The State again attached affidavits from the prosecutor and from another of the State's witnesses endorsed on the second amended information. As before, the prosecutor's affidavit stated that the witness was a material witness who would testify to material evidence for the State, that she had served the witness with notice to appear at the December 15 trial, and that she had received an affidavit stating the witness would be unavailable that day. In her affidavit, the witness stated that she would be on maternity leave on December 15 but would return to active duty at Project Harmony on February 15, 2021.

A hearing on the State's motion was held on December 9, 2020, via videoconference. At the State's request, the district court took judicial notice of the State's motion and the attached affidavits. The State also offered an exhibit consisting of compiled materials concerning the COVID-19 pandemic. McAuliffe did not object to the State's evidence, but he did object to the continuance as he did not want the continuance "taxed against his speedy trial."

On December 9, 2020, the district court entered an order, granting the State's motion for a continuance. In a separate order entered the following day, the court set forth specific findings with respect to the State's motion. In that order, the court found that the witness was a material witness prepared to provide material evidence in the State's case-in-chief, that she was unavailable to testify at the trial scheduled for December 15, and that the State had exercised reasonable diligence in attempting to secure her testimony for trial. The court found that the time was excludable under Neb. Rev. Stat. § 29-1207(4)(c)(i) (Reissue 2016).

Next, the district court discussed its review of the State's exhibit, detailing "the current conditions of the novel coronavirus and measures taken to prevent the spread of the disease." The court stated that it was taking judicial notice of its prior orders concerning COVID-19 and attached a May 2020 order from the presiding judge of the district court, excusing jurors from service in the district court for the month of June because the court did not have the space or resources to safely conduct jury trials within the then current COVID-19 restrictions. In its December 10 order, the court explained that while a formal order had not been entered, the courts of the judicial district had decided to determine on a case-by-case basis whether to conduct jury trials in December with the main criteria being whether the trial could be safely held. With respect to McAuliffe's trial, the court concluded that "[a]t this time . . . this trial cannot be conducted in a safe manner to prospective jurors." Accordingly, the court found that the time was also excludable for good cause under § 29-1207(4)(f).

Finally, citing *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014), the district court stated that McAuliffe waived his statutory right to a speedy trial when he requested a continuance on June 12 that continued the trial to September 8, a date outside the initial 6-month speedy trial deadline. The court also noted McAuliffe's subsequent plea in abatement, which required the court to continue the September 8 trial date. Accordingly, the court found that the time attributable to the State's continuance was excludable under § 29-1207(4)(b). The court then rescheduled McAuliffe's trial date to February 2, 2021. We note, as discussed further below, the court was incorrect in its determination that McAuliffe had waived his statutory speedy trial right at this point; the court's analysis did not take into account the tolling of the speedy trial clock due to McAuliffe's April 2020 motion for discovery.

On December 24, 2020, McAuliffe filed a motion in limine and a motion to sever. On January 13, 2021, the court ruled on both motions and noted that the case remained set for trial.

On January 31, 2021, McAuliffe filed his motion to discharge on statutory and constitutional speedy trial grounds. The district court heard McAuliffe's motion to discharge via videoconference on February 3. The State offered its two motions to continue with the attached affidavits, as well as "reoffer[ing]" exhibits pertaining to the previous continuance. The court received the two new exhibits and took judicial notice of the district court file and of a county court transcript. The court allowed the record to remain open for McAuliffe to later introduce pleadings from a county court case filed against McAuliffe, involving the second victim in the

current case. During a subsequent hearing, McAuliffe offered transcripts of the September and December 2020 hearings in this case and filings showing that one count of third degree sexual assault on a child, a Class IIIA felony, was dismissed without prejudice against McAuliffe in county court after the preliminary hearing because the State did not show sufficient probable cause. The State objected to the county court filings, and the court took the receipt of those exhibits under advisement.

On April 8, 2021, the district court entered an order, denying McAuliffe's motion to discharge. The court observed that the initial speedy trial clock would have run on August 10, 2020. The court again concluded, without accounting for the tolling of the speedy trial clock due to McAuliffe's April 2020 discovery motion, that McAuliffe waived his statutory right to a speedy trial under § 29-1207(4)(b) when he requested a continuance of the June 16 trial date and trial was continued to September 8, a date outside of the initial 6-month statutory speedy trial deadline. Nevertheless, the court performed a calculation of excludable time periods, attributing 26 days to McAuliffe's discovery motion, 88 days to his motion to continue, 98 days to his plea in abatement (during which time the State also filed its first motion to continue), 49 days to the State's second motion to continue, and 65 days to McAuliffe's speedy trial motion. The court observed that even if its findings about waiver were not considered, the speedy trial clock was tolled for 326 days, which would extend the speedy trial clock until July 2, 2021. The court specifically noted that the calculation included 49 days attributable to the State's second motion to continue, excludable under § 29-1207(4)(f) for good cause due to the novel coronavirus. The court stated that it had "rehearsed [sic] in its December 20 [sic], 2020 Order its specific findings that constitute good cause" and that it "makes this specific finding again."

Next, the district court addressed McAuliffe's constitutional speedy trial claim, applying the four-factor balancing test set out in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In balancing the factors of that test, the court concluded that there had been no denial of McAuliffe's constitutional speedy trial rights. We discuss the court's analysis further as necessary below.

McAuliffe subsequently perfected his appeal to this court.

## ASSIGNMENT OF ERROR

McAuliffe asserts, restated, that the district court erred in failing to find that his constitutional right to a speedy trial was violated.

## STANDARD OF REVIEW

As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Riessland*, 310 Neb. 262, 965 N.W.2d 13 (2021).

## ANALYSIS

McAuliffe asserts that the district court erred in failing to find that his constitutional right to a speedy trial was violated.

The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11. *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019). Determining whether a

defendant's constitutional right to a speedy trial has been violated requires application of a balancing test that involves consideration of four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *State v. Brown*, 310 Neb. 224, 964 N.W.2d 682 (2021). See *Barker v. Wingo, supra*. None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. *State v. Brown, supra*. Rather, the factors are related and must be considered together with other circumstances as may be relevant. *Id.*

In his motion to discharge, McAuliffe asserted both his statutory and his constitutional rights to a speedy trial, and the district court found that neither had been violated. On appeal, McAuliffe only challenges the court's findings with respect to his constitutional right to a speedy trial. While the constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other, the Nebraska Supreme Court has recognized that § 29-1207 provides a useful standard for assessing whether the length of a trial delay is unreasonable under the U.S. and Nebraska Constitutions. *State v. Brown, supra*. The Supreme Court has also observed that it is an unusual case in which the constitutional right to a speedy trial has been violated when the time limits under the speedy trial act have been met. See *id.* Given this interplay, we first set forth the district court's statutory speedy trial calculations before turning to the details of the constitutional speedy trial analysis.

*District Court's Statutory Speedy Trial Calculations.*

The statutory right to a speedy trial is set forth in § 29-1207 and Neb. Rev. Stat. § 29-1208 (Reissue 2016). Under § 29-1207(1), "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." Section 29-1207(2) generally provides that the 6-month period "shall commence to run from the date the indictment is returned or the information filed." Section 29-1207(4) provides for the exclusion of certain periods of delay from the speedy trial calculation. As relevant to the district court's calculations in this case, § 29-1207(4)(a) excludes all time between the time of the filing of a defendant's pretrial motions and their final disposition; § 29-1207(4)(c) excludes certain periods of delay "resulting from a continuance granted at the request of the prosecuting attorney" under certain limited circumstances; and § 29-1207(4)(f) provides that other periods of delay not specifically enumerated in the statute may be excluded in the speedy trial computation, "but only if the court finds that they are for good cause." We also note § 29-1207(b), which concerns periods of delay resulting from continuances "granted at the request or with the consent of the defendant or his or her counsel" and which provides that a defendant "is deemed to have waived his or her right to speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory six-month period."

To calculate the deadline for trial under the speedy trial statutes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4). *State v. Blocher*, 307 Neb. 874, 951 N.W.2d 499 (2020). Here, the State filed the information against McAuliffe on February 10, 2020. Excluding the day the information was filed, counting forward 6 months, and backing up 1 day, the statutory speedy trial clock would have run initially on August 10, as the district court calculated. The State notes that there is a separate speedy trial clock that began with the filing of the second amended information

on August 13, for the three counts involving the second child victim. See *State v. Gibilisco*, 279 Neb. 308, 778 N.W.2d 106 (2010) (filing of amended information adding four new charges of first degree sexual assault restarted speedy trial clock on new charges). We agree with the State's assertion that the 6-month speedy trial clock had not run on the additional charges in this case by January 31, 2021, when McAuliffe filed his motion to discharge (that clock would have run on February 13).

The first excludable period in this case was due to McAuliffe's motion for discovery filed on April 17, 2020, which was ruled on by the district court in an order entered on May 13. The plain terms of § 29-1207(4)(a) exclude all time between the time of the filing of a defendant's pretrial motions and their final disposition, regardless of the promptness or reasonableness of the delay. *State v. Carrera*, 25 Neb. App. 650, 911 N.W.2d 849 (2018). The excludable period commences on the day immediately after the filing of a defendant's pretrial motion. *Id.* Final disposition under § 29-1207(4)(a) occurs on the date the motion is granted or denied. *State v. Carrera, supra*. We agree with the district court's conclusion that the speedy trial clock was tolled for 26 days due to this motion. We also note that this motion would have tolled the initial speedy trial clock from August 10 to September 8, considering that adding 26 days to August 10 would have brought the clock to Saturday, September 5 and Monday, September 7, was a holiday (Labor Day). See *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981) (applying in speedy trial computation Neb. Rev. Stat. § 25-2221 (Reissue 1979), statute concerning effect of weekends and holidays on periods of time in which acts are to be done).

The second excludable period was due to McAuliffe's motion, filed on June 12, 2020, seeking to continue the jury trial then set for June 16. The motion was granted by the court that same day, and trial was rescheduled for September 8. In ruling on McAuliffe's motion to discharge, the court found that the speedy trial clock was tolled for 88 days due to this motion. *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021) (excludable time for continuance begins day after continuance is granted and includes day on which continuance ends). The court also determined, incorrectly, that McAuliffe had waived his right to a speedy trial at this point pursuant to § 29-1207(4)(b) because his motion for a continuance extended the trial date beyond the statutory 6-month period. We agree with the court's conclusion that the speedy trial clock was tolled for 88 days due to this motion; however, McAuliffe did not waive his statutory speedy trial right at this point because of the tolling that had already occurred due to McAuliffe's discovery motion. A defendant waives his or her statutory right to a speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory 6-month period. *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014). Because the statutory 6-month period had already been extended until September 8, a waiver did not occur at this point.

Despite incorrectly concluding that McAuliffe had waived his statutory speedy trial right, the district court proceeded to calculate additional excludable periods attributable to the parties' motions. The district court calculated a third excludable period as follows:

> September 1, 2020. [McAuliffe] files a Plea in Abatement. Jury trial set for September 8, 2020 is continued to December 15, 2020 to permit the Court to hear the Plea in Abatement and in conjunction with the State's [first] Motion to Continue trial. Court issues its order on the Plea in Abatement on October 16, 2020. Speedy trial is tolled 98 days.

- 6 -

The court apparently began this calculation September 9 (the day after the September 8 trial date) and ended it on December 15 (the rescheduled trial date), which is a period of 98 days. We note that that the court's calculation contains overlapping periods of time and that the time attributable to the plea in abatement should have begun on September 2, the day after McAuliffe filed his plea in abatement, and ending October 16, when the court ruled on his plea, a period of 29 days. See *State v. Williams*, 277 Neb. 133, 761 N.W.2d 514 (2009) (time excludable from statutory 6-month speedy trial period initiated by defendant's plea in abatement began day after plea filed and ended when trial court overruled plea). The period attributable to the State's continuance would have begun on September 4, the day after it was granted, and ended December 15. The total number of excludable days between September 2 and December 15 is 105 days (2 days attributable solely to McAuliffe, 76 attributable solely to the State, and 27 attributable to both).

The district court excluded a fourth period of 49 days pursuant to §§ 29-1207(4)(c)(i) and 29-1207(4)(f) due to the State's second motion for continuance, which resulted in the trial set for December 15, 2020, being continued to February 2, 2021. The State's second motion to continue was granted on December 9, 2020, so that excludable period (which also overlaps with the third period) commenced on December 10 and ended February 2, 2021. We agree that there are 49 excludable days that do not overlap with the third period. We note that the court did not consider time attributable to McAuliffe's motion to sever and motion in limine filed on December 24, 2020, and ruled on by the court on January 13, 2021, in its calculations.

Finally, the district court excluded a fifth period of 65 days due to McAuliffe's motion to discharge, filed on January 31, 2021, and ruled on by the court on April 8. This period, of course, overlaps with the fourth period which ended on February 2, and we agree that there are 65 additional excludable days from February 3 through April 8.

Based on its calculations, the district concluded that, even if McAuliffe had not waived his right to a speedy trial, the speedy trial clock had tolled for 326 days. Counting forward 326 days from August 10, 2020 (date on which speedy trial clock would have initially run), the court concluded that July 2, 2021, was the last day to begin trial and that time still remained on the speedy trial clock when McAuliffe filed his motion to discharge.

We agree that that there was still time remaining on the statutory speedy trial clock (both the clock based on the original charges against McAuliffe and the separate clock stemming from the added charges) when McAuliffe filed his motion to discharge. Because McAuliffe has not assigned error to the district court's statutory speedy trial findings, however, we do not address them further. With the information provided by the court's statutory speedy trial calculations as a useful reference point, we turn to the first factor of the constitutional speedy trial analysis.

*Length of Delay.*

The first factor, the length of the delay, is a triggering mechanism for the four-factor test. See *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021). Until there is some delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance in determining if the right to a speedy trial has been violated. *Id.* A delay of a year or more is the benchmark commonly recognized as presumptively prejudicial in a constitutional speedy trial analysis. *Id.* The more complex and serious the crime, the longer a delay might be tolerated,

because society also has an interest in ensuring that longer sentences are rendered upon the most exact verdicts possible. *Id.*

In analyzing McAuliffe's constitutional speedy trial claim, the district court did not discuss whether there was a presumptively prejudicial delay. Instead, it analyzed all four factors in determining that McAuliffe's constitutional speedy trial rights were not violated. With regard to the length of the delay, the court determined that the time between the filing of the original information and McAuliffe's motion to discharge was 356 days. The court found that 277 of those days were attributable to the various pretrial motions and continuances filed by McAuliffe (i.e., court only excluded the 49 days it had attributed to the State's second motion to continue from its calculation of 326 excludable days), and it determined that this factor did not weigh in his favor.

McAuliffe argues that the length of delay in this case was unreasonable and should be considered a deprivation of his constitutional right to a speedy trial. He notes that the speedy trial clock would have originally run on August 10, 2020, and he argues that the delays resulting from the State's two motions to continue were "unreasonable" and should weigh in favor of a "statutory [sic] violation of speedy trial rights." Brief for appellant at 6. McAuliffe does not explain why the delays due to the State's continuances were "unreasonable." He also ignores the periods of delay attributable to his own various motions.

McAuliffe has not shown that any of the delays in this case were presumptively prejudicial. We agree with the district court's conclusion that the time between the filing of the information and McAuliffe's motion to discharge was 356 days. Although our calculation of the exact number of days attributable to McAuliffe's motions would differ somewhat from the district court's calculation, we agree with its conclusion that the bulk of the excludable time was attributable to the various motions filed by McAuliffe, including the motion to discharge. And, we agree that the length of delay does not weigh in his favor. Absent a presumptively prejudicial delay, we need not address the remaining *Barker* factors, but as they were addressed by the district court and by McAuliffe in his brief on appeal, we examine them for the sake of completeness.

We also note that during oral arguments before this court, McAuliffe's attorney referenced a period of preindictment delay that he argued should also be considered in evaluating the length of delay factor for speedy trial purposes. McAuliffe did not raise this argument in his brief, and even if he had, prearrest or indictment delays are scrutinized under the due process clause of the Fifth Amendment, which has a limited role in protecting against oppressive delay in the criminal context. See *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014) (finding no case applying Fifth Amendment to claim for delay in bringing accused to trial after arrest or indictment). The Nebraska Supreme Court has rejected the idea that due process protects against delays in bringing an accused to trial after arrest or indictment, as opposed to prearrest or indictment delay. See, also, *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021).

*Reason for Delay.*

The second factor, the reason for delay, requires us to evaluate "whether the government or the criminal defendant is more to blame." *Doggett v. U.S.*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The primary burden to ensure that cases are brought to trial lies with the courts and the prosecutors. *State v. Schmader*, 13 Neb. App. 321, 691 N.W.2d 559 (2005). The U.S. Supreme Court has stated:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker v. Wingo*, 407 U.S. 514, 531, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

In addressing the second *Barker* factor in this case, the district court noted that "the bulk of the delay, 277 days, revolves around" McAuliffe's motions. The court also noted the additional 49 days attributed to "good cause due to the novel coronavirus pandemic," and it found no evidence that the State had deliberately attempted to delay the trial or hamper the defense. Accordingly, the court weighed this factor in favor of the State.

McAuliffe's arguments in this section of his brief do not directly address the considerations relevant to an analysis of the second *Barker* factor. McAuliffe first cites *State v. Vela-Montes*, 19 Neb. App. 378, 807 N.W.2d 544 (2011), and he argues that the district court's September and December 2020 orders granting the State's motions to continue "were improperly relied on by the court to establish good cause." Brief for appellant at 6. We also interpret his arguments to assert that the court improperly determined in its April 2021 order ruling on his motion to discharge that the 49 days attributable to the State's second motion to continue were excludable under § 29-1207(4)(f) for good cause due to the novel coronavirus. Additionally, he appears to challenge the exclusion of that same period for the unavailability of a witness pursuant to § 29-1207(4)(c)(i). He argues that the court's good cause findings were "not substantially supported by any evidence nor specific reasoning," were granted over his objection, and "the reasons for delays should not be attributed to [him]." Brief for appellant at 6-7.

McAuliffe does not argue that the delays due to the State's motions to continue were deliberate on the part of the State or hampered his defense. Nor does he acknowledge the district court's finding that the "bulk" of the delays in this case were attributable to his own motions. To the extent he is challenging the court's findings in the April 2021 order related to his statutory right to a speedy trial, he has not assigned error to any of those findings. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021).

McAuliffe's reliance on *State v. Vela-Montes, supra*, is also misplaced and does not support a finding that the reason for delay factor in this case should be weighed against the State for purposes of a constitutional speedy trial analysis. That case involved a defendant's motion for absolute discharge on statutory speedy trial grounds and whether time attributable to a motion to continue should have been excluded from the statutory speedy trial calculation due to the State's failure to comply with statutorily mandated procedures for requesting a continuance. See Neb. Rev. Stat. § 25-1148 (Reissue 2016). In that case, this court rejected the defendant's argument that he was deprived of a substantial right, the statutory right to speedy trial, in light of the State's failure to comply with the statutory requirements for filing a motion to continue as the right to have a motion supported by affidavits or sworn testimony is a mere technical right, not an essential legal right. *State v. Vela-Montes, supra*. Here, the record does not reflect a failure by the State to

comply with the statutory procedures for requesting a continuance. The State filed written motions setting forth the grounds alleged for its continuances and supporting affidavits, attesting to the unavailability of certain witnesses. These affidavits were also received into evidence, or judicially noticed, at the hearings on the State's motions. And, at the hearing on the State's second motion to continue, the court also received an exhibit of compiled materials concerning the COVID-19 pandemic offered by the State.

Finally, to the extent McAuliffe argues that delays attributable to the State's motions to continue were not for a "valid reason" for purposes of constitutional speedy trial analysis, we disagree. Both motions to continue were granted in part due to the unavailability of witnesses, and, as noted above, the State followed the requisite procedures with respect to those motions and provided evidence supporting its assertions of witness unavailability, and was a "valid reason" serving to justify appropriate delay. See *Barker v. Wingo*, 407 U.S. 514, 531, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). And with respect to the State's second motion to continue, we note that the Nebraska Supreme Court recently found that delays related to the COVID-19 pandemic were for "good cause" under a statutory speedy trial analysis and also constituted delays for a "valid reason" for purposes of the constitutional analysis. See *State v. Brown*, 310 Neb. 224, 964 N.W.2d 682 (2021). The record supports a similar conclusion in the present case.

In sum, the bulk of the delays were attributable to McAuliffe's own motions and the delays attributable to the State complained of by McAuliffe were for valid reasons for purposes of constitutional speedy trial analysis. This factor weighs in favor of the State.

*Assertion of Right.*

The third factor considers "whether in due course the defendant asserted his right to a speedy trial." *State v. Betancourt-Garcia*, 295 Neb. 170, 188, 887 N.W.2d 296, 311 (2016), *abrogated on other grounds, State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). There is some responsibility upon a defendant to assert his right to a speedy trial, but this is not to say that a defendant has a duty to bring himself to trial or to demand a trial. *State v. Wilson*, 16 Neb. App. 878, 754 N.W.2d 780 (2008). The district found that the only action taken by McAuliffe to assert his right to a speedy trial was the filing of his motion to discharge, and it concluded that this factor weighed in favor of the State. On appeal, McAuliffe argues that he could not assert his right to a speedy trial because the court granted the State's motions to continue and rescheduled his trial set for September 8, 2020, first to December 15 and then to February 2, 2021. McAuliffe did object on speedy trial grounds at the December 9, 2020, hearing on the State's second motion to continue. This factor favors McAuliffe, but we must weigh it against the other three factors, which generally weigh against a finding that McAuliffe's speedy trial rights were violated.

*Prejudice.*

The final factor considers whether the defendant suffered any prejudice from the delay. A showing of actual prejudice to a defendant alleging violation of constitutional speedy trial rights is required if the government exercised reasonable diligence in pursuing the defendant. *State v. Betancourt-Garcia, supra*. The prejudice factor is to be assessed "in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In analyzing this factor, the U.S. Supreme Court has

identified three interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Barker v. Wingo, supra*. The third of these is the most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*, 407 U.S. at 532.

Here, the district court noted that McAuliffe was incarcerated waiting disposition on the counts charged, which was "oppressive." However, the court observed that McAuliffe had neither asserted nor shown that the delay weighed particularly heavily on him. It also determined that there was nothing in the record illustrating that McAuliffe's defense had been impaired by the delay. Accordingly, the court found that the final factor did not favor either the State or McAuliffe. On appeal, McAuliffe does not identify how delay in this case affected these interests. The court's finding that this factor does not favor either party is not clearly erroneous.

In sum, after weighing the four *Barker* factors, we conclude that this is not the unusual case in which there was no statutory speedy trial violation but there was a constitutional speedy trial violation. Although McAuliffe asserted his right to a speedy trial by objecting to the State's second motion for continuance and by filing his motion to discharge, the other factors do not weigh in his favor. Accordingly, the district court did not err when it denied McAuliffe's motion to discharge on constitutional speedy trial grounds.

CONCLUSION

We conclude that neither McAuliffe's state nor his federal constitutional right to a speedy trial was violated. Accordingly, the district court did not err when it overruled McAuliffe's motion on that basis.

AFFIRMED.